# EXHIBIT 1

**LAST WILL AND TESTAMENT**

**-of-**

**JEAN-JACQUES BOISSIER**

I, **JEAN-JACQUES BOISSIER**, a citizen of Switzerland presently domiciled in Santiago, Chile, hereby revoke any and all wills and testamentary dispositions heretofore made by me, (except such wills and testamentary dispositions effectively disposing of property located outside of the United States and executed by me pursuant to Chilean or Swiss law) and hereby make, publish and declare this as and for my Last Will and Testament.

FIRST: I bequeath all of my tangible personal property as follows:

(a) If my wife, **VALESKA SIGREN BOISSIER**, shall survive me and shall be my lawful wife at the time of my death, all tangible personal property that I own at my death (1) which I shall have received by way of gift, inheritance or otherwise from my ancestors ("Ancestral Personal Property"), and (2) which shall be used as furnishings of any residence, either principal or secondary, that I may maintain at the time of my death, I bequeath to my QDOT Trustees, hereinafter named, to be held as part of and under the terms of the **Valeska Boissier Trust** created under Article NINTH hereof;

(b) All other Ancestral Personal Property that I own at my death, but which shall not be used as furnishings in any residence of mine at my death, including artwork, furniture and jewelry, or if my wife shall not survive me or is not my lawful wife at the time of my death, all my Ancestral Personal Property, I bequeath to my lawful surviving issue in substantially equal shares *per stirpes*, the determination of my Executors as to what shall constitute a substantially equal distribution to be absolute and final.

(c) All of my tangible personal property, other than Ancestral Personal Property, I bequeath as follows: (i) if my wife, VALESKA SIGREN BOISSIER, shall survive me and shall be my lawful wife at the time of my death, I bequeath said tangible personal property to my said wife, absolutely; and (ii) if my said wife does not survive me or is not my lawful wife at the time of my death, I bequeath said tangible personal property to my lawful surviving issue in substantially equal shares, the determination of my Executors as to what shall constitute a substantially equal distribution to be absolute and final. If I shall have deposited with my Executors a letter or other instructions suggesting how certain items of personal property might be distributed among my lawful surviving issue or others, I am confident that my wishes will be heeded to the extent practicable.

SECOND: I give, devise, and bequeath:

(a) To my lawful surviving issue, in equal shares, *per stirpes*, all joint venture, limited partnership, mineral lease and similar interests which I possess in oil or gas properties or other natural resources, but excluding any stock which I may own in any corporation other than an electing S Corporation under Section 1362 of the Internal Revenue Code of 1986, as amended, or any successor provision (hereinafter the "Code"). All determinations regarding the specific property to be included in the foregoing category so bequeathed shall be made by my Executors at their sole discretion.

(b) To my first cousin, JACQUELINE DE BROSSES, presently residing at 60 Avenue Marceau, Paris, France, the sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000) in cash, if she shall survive me. If my said cousin does not survive me, the sum of TEN THOUSAND DOLLARS ($10,000) to each of her three children, CHRISTIAN DE BROSSES, EMMANUEL DE BROSSES, and INES DE BROSSES, who survive me.

(c) To my first cousin, JACQUELINE ROULET, presently residing at Résidence La Source, rue du Lac 18, 2014 Bôle, Switzerland, the sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000) in cash, if she shall survive me.

(d) To my first cousin, ANITA GATES, presently residing at Canterbury Woods, 705 Renaissance Drive, Williamsville, New York 14221, the sum of TWNETY-FIVE THOUSAND DOLLARS ($25,000) in cash, if she shall survive me. If my said cousin does not survive me, the sum of TEN THOUSAND DOLLARS ($10,000) to each of her three children, PETER GATES, BRAD GATES, and DAVID GATES, who survive me.

(d) To each of my wife's children, JORGE ECHENIQUE, currently residing in Santiago, Chile, and ISABEL ECHENIQUE INGERSON, currently residing in Lafayette, Colorado, who shall survive me, the sum of FIFTY THOUSAND DOLLARS ($50,000) in cash if I shall predecease my wife, but if my said wife shall have predeceased me, the sum of ONE HUNDREND THOUSAND DOLLARS ($100,000) to each of her said children who shall survive me.

(e) To each of Jorge Echenique's three children, TERESITA ECHENIQUE, ANTONIA ECHENIQUE and MAXIMILIANO ECHENIQUE, all currently residing in Santiago, Chile, the sum of TEN THOUSAND DOLLARS ($10,000).

(f) To each of Isabel Echenique Ingerson's daughters, ZOE INGERSON, ALEXIA INGERSON, and TONIA INGERSON, the sum of TEN THOUSAND DOLLARS ($10,000).

(g) To my wife, VALESKA SIGREN BOISSIER, the interest that I may hold in our house located at 12110 Fray Leon Street, Santiago, Chile, if she shall survive me. If my said wife shall not survive me, I devise said Chilean real property to my wife's said children, JORGE ECHENIQUE and ISABEL ECHENIQUE INGERSON, or the survivor of them, in equal shares, absolutely.

(h) I hereby forgive any outstanding indebtedness owed to me by any family member and declare that such forgiveness shall constitute a legacy hereunder. My Executors are aware of the details involving such loans.

THIRD: My family and I have a long history of charitable giving, both directly and through The Niagara Trust, S.A. (1986-2001) and The JS Ten Trust (1998-2013). For this reason, and with the hope that my children and their children will continue this tradition, I make no further provision for charitable bequests in this Will.

FOURTH: On September 15, 1998, I entered into a trust agreement (known as The Valbois Trust) with various designated trustees. The terms of the trust provide that it shall be administered for my benefit and the benefit of my wife during our lives and upon the death of the survivor, the trust shall be divided into equal shares, *per stirpes*, and held in further trust for the benefit of my children (or their issue for any of my children who are then deceased). After much thought, I decided to place certain assets that had a situs outside of the United States of America into this trust fund to provide for the management of such assets during my life while providing a cost effective and efficient method of disposing such assets after my death. The disposition of such trust assets upon my death shall therefore be governed by the terms of that trust instrument rather than the terms of this Will.

FIFTH: In this Article, I hereby exercise the powers of appointment held by me with respect to:

(i) The Last Will and Testament of my grandmother, PENN SCHOELLKOPF, which Last Will and Testament was duly admitted to probate in the Surrogate's Court of the County of Niagara, State of New York, United States of America, on March 21, 1972;

(ii) The Last Will and Testament of my great-aunt, BETSY PENN, which Law Will and Testament was duly admitted to probate in the Superior Court of Rockingham County, State of North Carolina, United States of America, on March 1, 1965;

(iii) A certain trust under agreement dated July 25, 1962 by and between BETSY PENN as settlor and various designated trustees for the benefit of the University of North Carolina and certain named individuals;

(iv) A certain trust under agreement dated March 9, 1961 by and between PENN SCHOELLKOPF and PAUL A SCHOELLKOPF, JR. for my benefit and the benefit of other members of my family;

(v) A certain trust under agreement dated March 10, 1961 by and between BETSY PENN and PAUL A SCHOELLKOPF, JR. for my benefit and the benefit of other members of my family;

(vi) Fund B under the Will of my grandfather, PAUL A. SCHOELLKOPF, SR. and Article SIXTH u/w of my mother, JASMIN S. TREMBLEY;

(vii) The Cornell University Trust dated September 30, 1964 and Article SEVENTH u/w of my mother, JASMIN S. TREMBLEY;

(viii) The PENN SCHOELLKOPF Life Insurance Trust dated February 8, 1936 and the PAUL A. SCHOELLKOPF, SR. Life Insurance Trust dated May 20, 1936 appointed by Article EIGHTH u/w of my mother, JASMIN S. TREMBLEY; and

(ix) The JASMIN S. TREMBLEY Charitable Institutions Trust dated January 17, 1966 and Article SEVENTH u/w of my mother, JASMIN S. TREBLEY.

and direct that all property subject to the foregoing powers of appointment be distributed to my Residuary Trustees hereinafter named to hold and dispose of such property and interests subject thereto as follows:

(a) The assets subject to the foregoing powers of appointment shall be divided and allocated by my Executors, hereinafter named, equally *per stirpes,* into as many separate trust funds as I shall have children and lawful issue of any predeceased child (each of whom is hereinafter referred to as a "Beneficiary" of the fund allocated to him or her) and delivered to the Residuary Trustees of each such fund hereinafter named. My Residuary Trustees of each such fund shall receive the income of such fund and, annually or more often as they may in their discretion determine, pay such income to and/or apply the same to the benefit of the Beneficiary of such fund. My residuary Trustees of any fund may in lieu of payment or application to the benefit of the Beneficiary, by their unanimous action, apply any part or all of the income of such Beneficiary's fund to the issue of such Beneficiary at any time or times when my Residuary Trustees, in their absolute discretion, shall deem such payment or application to such Beneficiary's issue to be in the best interests of such Beneficiary's branch of my family.

(b) Upon the death of each Beneficiary, the remaining principal of the fund allocated to him or her, together with any income accumulated and unpaid thereon, shall be distributed among the issue of such Beneficiary as such Beneficiary may direct or appoint by deed or in his or her last will and testament, in such manner and proportions, either outright or in lesser estates or in trust (to the extent the same shall then be permitted by law but in no event beyond the period stated in paragraph (iii) or this Article FIFTH), unless appointed to a domestic trust in a U.S. state that has modified or eliminated the rule against perpetuities, or otherwise, as such deceased Beneficiary in his or her absolute discretion shall have determined. In default of such appointment, or if and to the extent it shall not take effect or be effective, my Residuary Trustees shall distribute the same, upon such death, in equal shares, *per*

*stirpes,* absolutely, among the then surviving issue of such deceased Beneficiary, or in default of such surviving issue, to such of my lawful issue as shall survive the Beneficiary so dying, in equal shares, *per stirpes*, absolutely; provided, however, that any property that would otherwise pass outright to any of my lawful issue, shall not pass outright if a trust fund created pursuant to the terms of paragraph (a) of this Article FIFTH (including, but not limited to, any further trusts created pursuant to the exercise of a power of appointment) is then being held for Beneficiary's benefit, but rather shall be added to the principal of such Beneficiary's trust fund and administered according to the terms of that trust.

(c) Notwithstanding anything hereinabove contained to the contrary, no trust or other provision for the benefit of any Beneficiary established pursuant to this Article FIFTH, shall continue beyond twenty-one (21) years after the death of the last survivor of my cousin ANN S. JEWETT, my cousin JANE S. BANTA, my cousin SUSAN B. SCHOELLKOPF, and my son, ANDRE PAUL BOISSIER, all of whom were alive at the creation of each power of appointment which I have exercised in this Article, and upon such termination any current or accumulated income or remaining principal then held in trust shall be distributed to the Beneficiary of such fund.

SIXTH: Under the terms of the instruments granting the powers of appointment that I have exercised in Article FIFTH hereof, I do not have the authority to appoint the property subject to the powers for the benefit of myself, my estate, my creditors, or the creditors of my estate. Rather, as such, it is my understanding that I do not have a general power of appointment with respect to this property. I am authorized under those instruments to direct the assets subject to the powers granted among a predefined class by testamentary instrument. Therefore, I am not the owner of the assets subject to the power granted to me which I have exercised hereunder, but am in essence the agent of the grantors of those powers. Notwithstanding any potential invalidity of the disposition of my personal assets under

this Will in the event I again become a domiciliary of Switzerland or for any other reason, I intend this instrument to exercise the powers described in Article FIFTH in any event.

SEVENTH: If my wife, VALESKA SIGREN BOISSIER, shall survive me and shall be my lawful wife at the time of my death, I give, devise and bequeath all of the rest, residue and remainder of my property and estate, both real and personal, of whatever nature and wherever situate, which I may own or be entitled to at the time of my death (my "residuary estate"), to my QDOT Trustees, hereinafter named, IN TRUST (to be known as the VALESKA BOISSIER TRUST) to be held and administered (along with the furnishings devised to my QDOT Trustees pursuant to paragraph (a) of Article FIRST), for the uses and purposes described in the remainder of this Article SEVENTH. My QDOT Trustees shall take such action and impose such conditions as my QDOT Trustees deem appropriate to assure such furnishings remain in the ownership and control of the QDOT Trustees, wherever they may be physically located. The VALESKA BOISSIER TRUST shall be maintained and administered under the laws of a state of the United States or the District of Columbia.

(a) During the life of my said wife, my QDOT Trustees shall, quarterly, or more often in their discretion, pay the net income of the VALESKA BOISSIER TRUST to and/or apply the same to the benefit of my said wife. This trust shall be specifically construed and operated to meet the definition of income in Section 2056A(c) of the Code and any related Treasury Regulations. Notwithstanding anything to the contrary herein, my QDOT Trustees shall exercise any power to allocate receipts and disbursements to principal and/or income in a manner that is consistent with the aforesaid definition of income.

(b) My wife shall have the right to require the sale of furnishings or any other unproductive property and the reinvestment of the proceeds of such furnishings or other property in productive assets by written notice to my QDOT Trustees; provided that my children shall have the right

to buy any such item or furnishings at its appraised value for sixty (60) days following the receipt of written notice of impending sale which my QDOT Trustees shall provide upon receipt of notice from my wife.

(c) I hereby direct that my Executors shall, in their sole discretion, determine whether to elect pursuant to Section 2056A of the Code, or any successor statute, and the applicable state law to qualify any portion of the trust created by this Article for the estate tax marital deduction. Generally, I anticipate that my Executors will elect to minimize the estate tax payable by my estate. However, the determination of my Executors with respect to the exercise of the election shall be conclusive upon all affected persons.

(d) If my QDOT Trustees pay or distribute principal of this trust and federal estate tax under Section 2056A is thereby assessed, my U.S. Trustees, hereinafter defined, shall withhold and pay the federal estate tax from the property to be paid or distributed. Upon the death of my wife or the occurrence of any other taxable event described in Section 2056A(b)(1) of the Code, or any successor statute, my QDOT Trustees shall pay from the principal of the trust its proportionate share of the estate tax assessed under Section 2056A by reason of the death of my wife. My QDOT Trustees' selection of assets to be sold to pay that amount, and the tax effects thereof, shall not be subject to question by any beneficiary. This trust shall be construed and operated to meet the requirements the Secretary of the Treasury may by regulation prescribe to ensure the collection of any tax imposed by and compliance with Section 2056A(b) of the Code.

(e) Notwithstanding anything to the contrary herein, if my said wife is not a United States citizen at the time of my death and does not become a United States citizen within the time prescribed by law to prevent the disallowance of a marital deduction based upon not being a United States citizen, and if my Executors decide to make an election under Section 2056A of the Code, or

applicable state law, to qualify any portion of the trust created by this Article for the estate tax marital deduction at least on trustee of the VALESKA BOISSIER TRUST shall be an individual citizen of the United States with a tax home (as defined in section 911(d)(3) of the Code) in the United States or a domestic United States corporation (such Trustee or Trustees sometimes being referred to herein as "U.S. Trustees"). A domestic United States corporation is a corporation that is created or organized under the laws of the United States or under the laws of any state of the United States or the District of Columbia. Furthermore, in such event, my QDOT Trustees shall comply with any requirements prescribed by Treasury Regulations issued for Qualified Domestic Trusts. The QDOT Trustees may amend the terms of this trust solely for the purpose of enabling the VALESKA BOISSIER TRUST to comply with those requirements and to be a Qualified Domestic Trust. My QDOT Trustees may also reform this trust to comply with the statutory and regulatory requirements for a Qualified Domestic Trust in effect at the time of my death if necessary to enable the trust to be a Qualified Domestic Trust. My QDOT Trustees must complete any such reformation by the time prescribed (including extensions) for filing the estate tax return. My QDOT Trustees may also accept transfers and irrevocable assignments by my wife, her personal representative (if she is incompetent) and her executor, of property passing outright to my wife (including, but not limited to, retirement accounts and annuities) that would otherwise qualify for the marital deduction if it was held by a Qualified Domestic Trust.

(f) If my Executors decide to make an election under Section 2056A of the Code, or applicable state law, to qualify any portion of the trust created by this Article for the estate tax marital deduction, my QDOT Trustees shall comply with the requirements for security arrangements for Qualified Domestic Trusts as set forth in Treas. Reg. Section 20.2056A-2(d)(1)(i) or (ii), as summarized as follows:

(i) *Trust in Excess of $2 Million.* If the fair market value of the assets passing to the trust (determined without reduction for any indebtedness thereon) exceeds $2 million on the relevant valuation date (or such other amount specified in an amendment to or other modification of the statute and/or regulations), then my QDOT Trustees must at all times during the term of the trust either satisfy the U.S. Bank as trustee requirement (see Treas. Reg. Section 20.2056A-2(d)(1)(i)(A)), or furnish a bond that satisfies the requirements of Treas. Reg. Section 20.2056A-2(d)(1)(i)(B), or furnish an irrevocable letter of credit that satisfies the requirements of Treas. Reg. Section 20.2056A-2(d)(1)(i)(C), (hereinafter referred to as the U.S. Bank, Bond or Letter of Credit Requirement). My QDOT Trustees may alternate between any of the security arrangements described in the preceding sentence provided that, at all times during the term of the trust, one of the arrangements is operative.

If my QDOT Trustees elect to furnish a bond or letter of credit as security, then in the event the Internal Revenue Service draws on the instrument in accordance with its terms, neither my U.S. Trustees not any other person will seek a return of any part of the remittance until after April 15th of the calendar year follow the year in which the bond or letter of credit is drawn upon.

(ii) *Trust of $2 Million or Less.* If the fair market value of the assets passing to the trust (determined without reduction for any indebtedness) is $2 million or less on the relevant valuation date (or such other amount specified in an amendment to or other modification of the statute and/or regulations), then my QDOT Trustees must comply with either the U.S. Bank, Bond, or Letter of Credit Requirement only if more than 35% of the fair market value of the trust assets, determined annually on the last day of the taxable year of the trust, consists of real property located outside the United States. For purposes of determining whether more than 35% of the trust assets consist of foreign real property, Treas. Reg. Section 20.2056A-2(d)(1)(ii)(B) applies.

(iii) *Determination of Value*. For purposes of determining whether the fair market value of the trust assets exceeds $2 million, my QDOT Trustees are authorized to make the election under Treas. Reg. Section 20.2056A-2(d)(1)(iv)(A) with respect to real property used as my wife's personal residence.

(iv) *Amount of Bond or Letter of Credit*. For purposes of determining the amount of the bond or letter of my credit, my QDOT Trustees are authorized to make the election under Treas. Reg. Section 20.2056A-2(d)(1)(iv)(B) with respect to real property used as my wife's personal residence.

(v) *Annual Statements*. My QDOT Trustees are directed to file any annual statements required under Treas. Reg. Section 20.2056A-2(d)(3).

(vi) *General Conduct*. Notwithstanding anything contained herein to the contrary, my U.S. Trustees are hereby authorized to enter into alternative plans or arrangements with the Internal Revenue Service pursuant to Treas. Reg. Section 20.2056A-2(d)(4) to assure collection of the deferred estate tax, in lieu of the provisions contained herein.

(vii) *References to Regulations*. All references to "Treas. Reg." in this document shall be references to regulations published under 26 CFR as in effect on the date of execution of this document, or, in the event that any such regulation is amended or superseded thereafter, to the regulation (or any successor regulation) as so amended.

(viii) *Dollar Values*. The use of the dollar sign ($) shall indicate amounts stated in U.S. dollars.

(g) If the effect of any provision of this Will would be to prevent the allowance of a marital deduction with respect to the bequest to my wife under this Article, then I direct that such

provision shall not apply to said bequest to my wife and that so far as this bequest in concerned, this Will shall take effect as if such provision did not exist.

(h) Upon the death of my wife, VALESKA SIGREN BOISSIER, or upon my death if my said wife shall not survive me or shall not be my lawful wife at the time of my death, the principal of the VALESKA BOISSIER TRUST or my entire residuary estate, as the case may be, shall be distributed as follows:

(i) I direct my QDOT Trustees or my Executors, as the case may be, to distribute my GST Credit Trustees, hereinafter named, in trust, property with an aggregate fair market value equal to my exemption from Generation Skipping Transfer Tax under Section 2631 of the Code (my "GST exemption) chosen by my QDOT Trustees or my Executors, as the case may be, in their sole discretion (or the entire remainder of the VALESKA BOISSIER TRUST or my entire residuary estate, as the case may be, if it has an aggregate fair market value of less than my GST exemption). This trust shall be known as my "GST Credit Trust" and administered according to the following provisions:

(ii) During the life of the survivor of those of my children and grandchildren who shall survive me, to and until the death of the last survivor of them, my GST Credit Trustees shall receive the income thereof and shall, annually or more often in their discretion, pay over the net income thereof to and/or apply such net income to the benefit of (1) first, my children who shall be living at the time of any such periodic distribution, in equal shares and (2) upon and following the death of the last survivor of my children, to my grandchildren who shall be living at the time of any such periodic distribution and the issue of any of them who shall have died, in equal shares, *per stirpes*. Upon the death of the last survivor of those of my children and grandchildren who shall survive me, I direct my GST Credit Trustees to distribute any remaining principal of my GST Credit Trust among my them living grandchildren, if any, who were born after my death (or their issue if any are not then living) and

the then living issue of my grandchildren who survived me, in equal shares, *per stirpes*. In default of such beneficiaries, I direct my GST Credit Trustees to distribute any remaining principal of my GST Credit Trust in equal shares, *per stirpes*, absolutely, among the then surviving issue of my first cousins, JACQUELINE DE BROSSES, ANN SCHOELLKOPF, and JANE PENN SHOELLKOPF BANTA.

(iii) The remainder of the corpus of the VALESKA BOISSIER TRUST, or the balance of my residuary estate, as the case may be, shall be distributed as follows:

(A) If the balance of such fund is less than TWO MILLION DOLLARS ($2,000,000), I direct that my Executors or QDOT Trustees distribute such funds to my then living lawful issue in equal shares, *per stirpes*, absolutely.

(B) If the balance of such fund is TWO MILLION DOLLARS ($2,000,000) or more, I direct that (i) ONE MILLION DOLLARS ($1,000,000) be distributed outright to my then living children, and the issue of any child that is not then living, in equal shares, *per stirpes*, and (ii) the balance of such fund shall be divided and allocated equally, *per stirpes*, into as many separate trust funds as I shall have children and lawful issue of any deceased child then living (each of whom is hereafter referred to as the "Beneficiary" of the fund allocated to him or her) and shall be held by my Residuary Trustees to be administered as follows:

(1) My Residuary Trustees of each such fund shall receive the income of such fund and, annually or more often as they may in their discretion determine, pay such income to and/or apply the same to the benefit of the Beneficiary. My Residuary Trustees of any fund may in lieu of payment of application to the benefit of the Beneficiary, by their unanimous action, apply any part or all of the income of such Beneficiary's fund to the issue of such Beneficiary at any time or times when my Residuary Trustees, in their absolute discretion, shall deem such payment or application to such Beneficiary's issue to be in the best interests of such Beneficiary's branch of my family.

(2) Upon the death of each Beneficiary, the remaining principal of the fund allocated to him or her, together with any income accumulated and unpaid thereon, shall be distributed among the issue of such Beneficiary, as the Beneficiary may direct or appoint by deed or in his or her Last Will and Testament, in such manner and proportions, either outright or in lesser estates or in trust (to the extent the same shall then be permitted by law), or otherwise, as such deceased Beneficiary in his or her absolute discretion shall have determined. In default of such appointment, or if and to the extent is shall not take effect or be effective, my Residuary Trustees shall distribute the same, upon such death, in equal shares, *per stirpes*, absolutely, among the then surviving issue of such deceased Beneficiary, or in default of such surviving issue, to such of my lawful issue as shall survive the Beneficiary so dying, in equal shares, *per stirpes*, absolutely; provided, however, that any property that would otherwise pass outright to any of my lawful issue shall not pass outright if a trust fund created pursuant to the terms of this Article SEVENTH (including, but not limited to, any further trusts created pursuant to the exercise of a power of appointment) is then being held for such Beneficiary's benefit but rather shall be added to the principal of such Beneficiary's trust fund and administered according to the terms of that trust. In default of any issue of mine then living, I direct my Residuary Trustees to distribute any remaining principal in equal shares, *per stirpes*, absolutely, among the then surviving issue of my first cousins, JACQUELINE DE BROSSES, ANN SCHOELLKOPF, and JANE PENN SCHOELLKOPF BANTA.

(3) Notwithstanding anything hereinabove contained to the contrary, no trust or other provision for the benefit of any Beneficiary established pursuant to this Article SEVENTH, shall continue beyond twenty-one (21) years after the death of the last survivor of the Beneficiaries who were living on the date of my death, and upon such termination any current or

accumulated income or remaining principal then held in each fund shall be distributed to the Beneficiary of such fund.

EIGHTH: I hereby expressly authorize my Residuary Trustees, based upon the fund involved, (other than a Beneficiary or the issue of a Beneficiary of any fund who shall not participate in the exercise of such powers with respect to such fund), at any time and from time to time, to pay to or for the benefit of any Beneficiary of such trust created pursuant to the provisions of this my Last Will and Testament, so much of the principal of said trust fund as, in their absolute discretion, they shall consider necessary or appropriate for the support, comfort or welfare of any beneficiary thereof. Such action shall require the unanimous consent of all participating Residuary Trustees of any fund created under Articles FIFTH and SEVENTH which is invaded. Furthermore, I hereby expressly authorize my QDOT Trustees, upon my said wife's written request delivered to them, to pay to my said wife and/or apply for her benefit from the principal of the VALESKA BOISSIER TRUST such sum or sums as they, in their sole and absolute discretion, shall deem necessary or proper to provide for the health, support, welfare or comfort of my said wife or to enable her to maintain the standard of living which she now enjoys. The income and principal of the VALESKA BOISSIER TRUST shall in all events be payable only to my wife, VALESKA SIGREN BOISSIER, during her life.

NINTH: If any property, including income hereunder, shall become payable or distributable to any infant (meaning a person who has not attained the age of twenty-one (21) years), such property shall vest in such infant. During the minority of such infant, however, my Executors or Trustees (whether serving as QDOT, GST Credit or Residuary Trustees), as the case may be, shall have sole and absolute discretion to retain the same and any income therefrom, or sell the same on such terms as they shall deem equitable, and invest and reinvest the proceeds of the sale and any income as they shall deem advisable without restriction by any rule of law regarding investment of trust funds, or hold

such property, proceeds or income in kind, or in cash and uninvested, or pay over such property, proceeds or income to, or apply the same for the benefit of, such infant, or pay the same to either parent or to the guardian of such infant, or to the person with whom such infant resides, or to a Custodian appointed under any Uniform Transfers to Minors Act, and in any such case the receipt by any payee as aforesaid shall be a full discharge of my Executors or Trustees from further accountability for such property, proceeds or income. My Executors of Trustees shall not be required to give or furnish any bond or other security for acting hereunder with respect to any property in any jurisdiction. My Executors and Trustees may exercise, with respect to all property retained pursuant to this Article, all powers and discretion conferred on them by this Will.

TENTH: Except as otherwise provided herein, I give to my Executors and Trustees (whether serving as QDOT, GST Credit, or Residuary Trustees) named, including any substitute, successor or successors serving hereunder, full power and authority in each capacity:

(a) To pledge, exchange, mortgage, lease, without restriction to any term of years provided for fiduciaries by Section 11-1.1 of the New York Estates, Powers and Trusts Law, convey, sell, for cash or credit, any and all property, real or personal, tangible or intangible, constituting any part or all of my estate or any trust fund created hereunder upon such terms and conditions and by such instrument or instruments in writing, containing such clauses, covenants and agreements as they shall deem proper.

(b) To exercise any and all rights issuing out of or accruing by reason of the ownership or holding of any securities constituting any part of my estate or any trust fund held hereunder, including the right to subscribe to further or new issues of securities, and for that or any other purposes to borrow, either on the security of the assets of my estate or such trust fund, or otherwise, as they in their absolute discretion shall deem expedient; to vote any such securities for the election of

themselves or of such other persons as they may designate as directors and officers of such corporation, and to deposit any such securities for the purposes of any voting trust or for any other purpose; and to exchange any such securities or rights and/or receive other securities, rights or obligations in their place, in any reorganization affecting such securities or rights, or providing for their exchange or otherwise;

(c) To retain any or all of my estate or any trust fund held hereunder in the same form or kind of investment in which it may be at the time of my death and, from time to time as they shall find expedient, to invest and reinvest any part or all of my estate or any trust fund held hereunder in such securities and other property as to them shall seem advisable, free from any limitations imposed by law with respect to the character of trust investments, and without regard to the proportion any such investment or investments of a similar character may bear to the entire amount of my estate or any trust fund held hereunder, it being my purpose to give my Executors and Trustees, in each capacity, the broadest powers of retention and of disposition of investments which they, in either capacity, in their absolute, uncontrolled discretion, may from time to time deem it advisable to acquire;

(d) To make distributions of any trust fund, including partial withdrawals of principal, in kind, and my executors and trustees are directed so to distribute my estate and any trust fund to the extent that, such distribution may be feasible; and, if my executors or trustees shall deem it advisable, to make any part of such distribution in kind by undivided shares in specific securities or other property;

(e) To constitute any bank or trust company or safe deposit company custodian or depositary of any or all securities at any time held by them, and to cause any or all securities at any time held by them, to be transferred to, and held of record in the name of, any nominee or nominees selected by them, or by any such custodian or depositary; to appoint and to set through agents selected by them with respect to all matters and things not required by law to be performed by them in person,

and, specifically, to vest in any such agent(s) or any employee(s) authority to enter any safe deposit box rented or maintained by them;

(f) To hold any or all of the principal of two or more trusts held hereunder in one or more consolidated funds in which the separate trusts shall have undivided interests;

(g) In their absolute discretion, to apportion and allocate stock, liquidation, capital gains and other extraordinary dividends received, and charges incurred, between income and principal; notwithstanding Section 11-2.1 of the New York Estates, Powers and Trusts Law or any provision of the laws of the State of New York, or any other state, country or jurisdiction which may be applicable; capital gains dividends, and distributions of regulated investment companies, or distributions from capital gains of mutual funds, investment trusts and similar business organizations shall be allocated to income unless my said Executors or Trustees shall, in their absolute discretion, from time to time, allocate such distributions to principal account; any apportionment or allocation hereunder shall fully protect my said Executors and Trustees with respect to any action taken or payment made in reliance thereon; and

(h) To do any and all acts and to take any and all proceedings which they may deem necessary and/or desirable or for carrying into effect any of the provisions of this my Last Will and Testament.

TWELFTH:

(a) I appoint my children, ANDRE PAUL BOISSIER and NATASHA DOLORES BOISSIER, and my attorney, DAVID L. ROACH, as Executors of this my Last Will and Testament. I appoint my said children, ANDRE PAUL BOISSIER and NATASHA DOLORES BOISSIER, and my attorney, DAVID L. ROACH, Trustees of my GST Credit Trust(s). If at any time my said children shall not be serving as such Executors, the surviving Executor shall designate in writing a Successor Executor

from among my issue or the issue of my late uncle, PAUL A. SCHOELLKOPF, (hereinafter "Family Executors") so that at all times there will be at least one of my children or Family Executors serving with the Independent Executor. DAVID L. ROACH, and any successor to him appointed pursuant to paragraph (d) of this Article THIRTEENTH, is referred herein as the "Independent Executor" and "Independent GST Credit Trustee."

(b) I hereby appoint the following persons as my Residuary Trustees with regard to the trust funds that I have created in Articles FIFTH, and SEVENTH for the benefit of my children and/or their issue:

(i) For the trust funds created for the benefit of my son ANDRE PAUL BOISSIER, and/or his issue, the Residuary Trustees shall be my cousin, SUSAN B. SCHOELLKOPF, and my attorney, DAVID L. ROACH;

(ii) For the trust funds created for the benefit of my son, SERGEI JEAN-FREDERIC BOISSIER, and/or his issue, the Residuary Trustees shall be my cousin ANN SCHOELLKOPF JEWETT, and my attorney, DAVID L. ROACH; and

(iii) For the trust funds created for the benefit of my daughter, NATASHA DOLORES BOISSIER, and/or her issue, the Residuary Trustees shall be my cousin, JANE SCHOELLKOPF BANTA, and my attorney, DAVID L. ROACH.

Hereinafter DAVID L. ROACH, and any successor to him, appointed pursuant to paragraph (d) of this Article TWELFTH, is referred to as the "Independent Residuary Trustee."

(c) The Trustees of the VALESKA BOISSIER TRUST ("QDOT Trustees") shall be HSBC BANK USA of Buffalo, New York and a member of the law firm of ROACH, LENNON, & BROWN, PLLC, or any successor firm or other firm with which DAVID L. ROACH shall be associated. (hereinafter called the "Firm"), who is a citizen of the United States with a tax home (as defined in

Section 911(d)(3) of the Code) in the Unites States. The initial member of the Firm who shall serve as QDOT Trustee shall be DAVID L. ROACH.

(d) In the event that DAVID L. ROACH fails or ceases to serve as Independent Executor and/or Trustee (whether QDOT, GST Credit and/or Residuary) hereunder, by death, resignation or otherwise, a member of the Firm is hereby designated as his successor. The member of the Firm who will serve as such Successor Independent Executor, GST Credit Trustee and Residuary Trustee shall be designated in writing by the surviving Executors, GST Credit Trustees and/or Residuary Trustees, as the case may be, in office upon DAVID L. ROACH's failing or ceasing to serve. DAVID L. ROACH shall designate in writing delivered to the court principally in charge of the administration of my estate his successor QDOT Trustee from the firm. If in turn any Successor Independent Executor, GST Credit Trustee, QDOT Trustee and/or Residuary Trustee shall fail or cease to serve for any reason, a member of the Firm shall succeed such successor who shall be chosen in the same manner as the original successor to DAVID L. ROACH. If the Residuary of GST Credit Trustees then in office shall fail to exercise the power of designation herein conferred upon them with respect to a Successor Independent Residuary of GST Credit Trustee within ninety (90) days after the vacancy shall have occurred, or where a predecessor QDOT Trustee shall fail to exercise his power of designation of his successor, the member of the Firm who will serve as Successor Independent Residuary, GST Credit and/or QDOT Trustee shall be designated in writing by the Firm.

(e) In the event that it is impossible to designate a successor Independent Executor, GST Credit Trustee, QDOT Trustee or Residuary Trustee because the Firm has been dissolved, without leaving any successor firm, or for any other reason, I appoint as successor Independent Executor, GST Credit Trustee, and/or Residuary Trustee, HSBC BANK USA, Buffalo, New York or its successor corporation and in such event it shall serve as sole QDOT Trustee.

(f) The appointment of any designee in accordance with the foregoing paragraphs (b), (c) and (d) shall be effective upon the filing of a duly certified copy of the instrument containing such designation in the office of the clerk of the court in which this Will shall have been probated, and upon such successor duly qualifying as required by law.

(g) As a condition to the said DAVID L. ROACH, and any successor from the Firm accepting appointment as an Executor or Trustee (whether Residuary, GST Credit or QDOT) hereunder, he shall agree that the compensation to be paid to him as such executor and trustee shall be in full for the services to be rendered by him in such fiduciary capacities and for any and all ordinary legal services (not including litigation) which he or any firm of which he shall then be a member may be requested to render in the administration of my estate or of any trust or trusts created hereunder, provided, however, and I so direct, that the said DAVID L. ROACH or any successor from the Firm shall be entitled to one full commission as an Executor and/or Trustee, notwithstanding the fact that there may be more than three executors and/or trustees then in office, and the balance of commissions as allowed by law shall be equally divided among the remaining Executors and/or Trustees.

(h) Any Independent executor, GST Credit Trustee or Residuary Trustee from the Firm other than DAVID L. ROACH, may be removed for reasonable cause by unanimous action of the remaining executors, GST Credit Trustees or Residuary Trustees, as the case may be, coupled with the designation of a Successor Executor or Trustee chosen from the Firm by a majority of the remaining Executors, GST Credit Trustees or Residuary Trustees as hereinabove provided, said removal and designation to be expressed in writing and delivered to the Independent Executor, GST Credit Trustee or Residuary Trustee to be removed and to his designated successor. As used in this paragraph "reasonable cause" shall not include the manner in which the Independent Executor, GST Credit or Residuary Trustee has exercised powers over accumulation or distribution of the income or corpus of any trust

created hereunder unless the Independent Executor, GST Credit or Residuary Trustee's exercise of such powers is inconsistent with the needs of any Beneficiary for support in the Beneficiary's accustomed manner of living.

(i) Any Executor or Trustee (whether Residuary, GST Credit or QDOT) named herein or appointed pursuant to the terms of this Will may resign at any time by giving thirty days' notice in writing to that effect to the court in which the primary probate of my estate shall occur.

(j) I direct that none of my named Executors or Trustees (whether Residuary, GST Credit or QDOT), or any substitute or successor executor and/or trustee appointed pursuant to the provisions of this Will, shall be required to give bond or other security for the faithful performance of his, her, or its duties as executor and/or trustee in any jurisdiction in which he, she, or it may be called upon to serve. Notwithstanding the foregoing, my QDOT Trustees shall comply with the requirements for security arrangements for Qualified Domestic Trusts as set forth in Treas. Reg. Section 20.2056A-2(d)(1)(i) or (ii).

(k) Unless otherwise provided herein, I authorize and empower a majority of my Executors or Trustees (whether Residuary, GST Credit or QDOT) from time to time qualified to serve hereunder to exercise any and all powers conferred upon or vested in all such Executors or Trustees (whether Residuary, GST Credit or QDOT), as the case may be, and such a majority in exercising such powers may execute any instruments, perform any act, or effect any decisions necessary or appropriate under this Will.

(l) I direct that none of my said Executors or Trustees (whether Residuary, GST Credit or QDOT) shall under any circumstances be held liable to anyone for any loss or diminution of principal or income resulting from any act or omission of theirs in the administration of my estate or of any trust funds created hereunder, in the absence of bad faith on his, her, or its part.

*THIRTEENTH:* Notwithstanding any other provision hereinabove contained, if any portion of my estate is in any event capable of being held in trust for a longer period than is permitted by the law of the state which may govern the vesting of any interest hereunder, or if in any such event the vesting of any interest hereunder may occur after the expiration of such permissive period, then upon the happening of any such event such portion of my estate shall not be held in further trust, but shall rather be paid over absolutely to the person or persons to whom, and in the proportions in which, the income therefrom was then payable.

FOURTEENTH: In the event that the income or principal of any of the trusts herein created or any part thereof, (other than the VALESKA BOISSIER TRUST), should, because of any attempted alienation of any beneficiary or because of any seizure under process, become payable or be likely to become payable to any person other than the designated beneficiary, then the right of such beneficiary to receive such principal or income shall cease, and the Trustees (other than such beneficiary if he or she shall then be serving as a Trustee) in their absolute discretion may pay to the parent of the beneficiary, the spouse of the beneficiary, or to the issue of the beneficiary, or apply to their use and benefit in equal shares *per stirpes* (but without any obligation to do so), or pay to any person or persons for the use or benefit of the beneficiary, the principal or income which would otherwise become payable to the beneficiary, and such payment by the Trustees shall constitute a full discharge to them in respect thereof. The income and principal of the VALESKA BOISSIER TRUST shall in all events be payable only to my wife, VALESKA SIGREN BOISSIER, during her life.

FIFTEENTH: I direct that all estate, inheritance, transfer, succession and other death taxes imposed by law in any jurisdiction, including any interest and penalties thereon, upon or with respect to any property passing under this Will, shall be paid by my Executors out of my residuary estate as an expense of administration. I direct that all other such taxes, including any interest and penalties

thereon, imposed upon or with respect to any other property or interest which may be included by any taxing authority in my gross estate for estate or inheritance tax purposes (including, without limitation, any property or interest with respect to which I may possess a power of appointment), shall be apportioned among and charged against such properties or interests as provided in Section 2-1.8 of the New York Estates, Powers and Trusts Law as in effect on the date of this Will.

SIXTEENTH: Notwithstanding any provision of law to the contrary, I particularly provide that Trois Bois, Ltd. ("Trois Bois"), any beneficiary of my estate or of any trust fund created hereunder, or the spouse of any of my children, or any of my Executors or my Trustees, notwithstanding the fact that he or she may be an Executor of this my will and/or a Trustee of a trust herein created, may purchase any asset of my estate for such price and on such terms and conditions as my Executors or Trustees other than the purchaser shall in their absolute discretion determine, and that in the event of such purchase he, she or it will acquire title to the asset purchased free from any trusts herein created.

SEVENTEENTH: I have learned in my lifetime the importance of consistency of planning and continuity of relationships in the management of substantial personal and trust funds. Accordingly, without modifying or limiting any other power or authority granted to my executors or trustees (Residuary, GST Credit and QDOT) hereunder, I authorize and empower them in their discretion:

(a) To retain as counsel for my estate and the trusts created hereunder the law firm of ROACH, LENNON, & BROWN, PLLC (or any successor firm) or other firm with which DAVID L. ROACH shall be associated.

(b) To employ or retain, without diminution of their own compensation, investment management counsel or consultants or a bank or firm engaged in the business of investment advice. If my executors or trustees do elect to employ or retain investment counsel, I request that they give first consideration to EDGEWOOD MANAGEMENT, LLC, New York, New York.

(c) To employ or retain a custodian of the assets of my estate or of any trust created hereunder, and I request that for this purpose they give first consideration to HSBC BANK USA, Buffalo, New York.

(d) To employ or retain certified public accountants, and I request that they give first consideration to FREED MAXICK (or its successors), Buffalo, New York.

(e) To rent a suitable office for transacting the business of my estate or of any trust created hereunder and to employ such secretarial or clerical assistance as may seem necessary or desirable.

EIGHTEENTH: If my wife, VALESKA SIGREN BOISSIER shall die simultaneously with me or in such circumstances as to render it impossible to determine who predeceased the other, I direct that I shall be deemed to have survived my wife and that the provisions of this my Will shall be construed upon that assumption, notwithstanding the provisions of any law establishing a different presumption of order of death.

NINETEENTH: My children have found that the administration of financial investments in which they have common interests has been simplified through the use of their investment corporation, Trois Bois Ltd. (Trois Bois). Therefore, I direct my Executors and Trustees (whether serving as QDOT, Residuary or GST Credit Trustees) shall offer for sale to Trois Bois any real property that they may intend to sell from my estate or any trust created therefrom at its appraised value for a period of thirty (30) days prior to offering such property to any other person, unless Trois Bois shall earlier waive such option to Purchase in writing. The terms of payment for the purchase of any such property shall be as negotiated between Trois Bois and my Executors or Trustees, as the case may be, and may include deferred payments by way of a purchase money mortgage or other credit terms, or if my Executors and Trustees do not otherwise agree, shall be cash at closing.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 17th day of June, 2019.

Jean-Jacques Boissier

The foregoing instrument, consisting of twenty-seven (27) pages was on the 17th day of June, 2019, signed, sealed, published and declared by JEAN-JACQUES BOISSIER, the Testator therein named, as and for his Last Will and Testament in the presence of us and each of us, and we, at his request and in his presence, and in the presence of each other have signed our names as witnesses thereto.

_______________ residing at 8456 Rustic Wood Court
East Amherst, New York 14051

_______________ residing at 299 Walton Drive
Amherst, New York 14226

_______________ residing at 171 East Grand Boulevard
Cheektowaga, New York 14225