# EXHIBIT 4

REÇU le

i1.4 MARS 2024

REPUBLIQUE ET  CANTON DE GENEVE

## POUVOIR JUDICIAIRE

**C/1179/2023**                                                   **ACJC/332/2024**

# ARRÊT

# DE LA COUR DE JUSTICE

## Chambre civile

## DU MERCREDI 6 MARS 2024

Entre

**1) Monsieur André BOISSIER**, domicilié 270 18th Street, Santa Moncia, 90402 Californie, Etats-Unis d'Amérique,

**2) Madame Natasha BOISSIER**, domiciliée 24 Northampton Avenue, Berkeley, 94707 Californie, Etats-Unis d'Amérique,

**3) Monsieur Sergei BOISSIER**, domicilié 4382 Hookui Road, Kilauea, 96754 Hawaii, Etats-Unis d'Amérique,

**4) David ROACH**, domicilié 535 Washington Street, Suite 1000, Buffalo, 14203 New York, Etats-Unis d'Amérique,

Tous appelants contre une ordonnance rendue par le Tribunal de première instance de ce canton le 26 septembre 2023, représentés par Me Serge CALAME, avocat, MLL Froriep SA, rue du Rhône 65, case postale 3199, 1211 Genève 3,

et

**1) Madame Valeska SIGREN BINDHOFF**, domiciliée 12.110 calle Fray Luis de Leon, Las Condes, ciudad de Santiago, Chili, intimée, représentée par Me Pierre DUCRET, avocat, CMS von Erlach Partners SA, esplanade de Pont-Rouge 9, case postale 1875, 1211 Genève 26,

**2) BANQUE LOMBARD ODIER & CIE SA**, sise rue de la Corraterie 11, autre intimée, représentée par Me Emma LOMBARDINI, avocate, Poncet Turrettini, rue de Hesse 8, case postale, 1211 Genève 4.

Le présent arrêt est communiqué aux parties par plis recommandés du 13 mars 2024.

Exhibit 4 Page 742

## EN FAIT

**A.**   Par ordonnance OTPI/596/2023 du 26 septembre 2023, notifiée aux parties le 28 septembre 2023, le Tribunal de première instance (ci-après : le Tribunal) a rejeté la requête de mesures provisionnelles formée par André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH (ch. 1 du dispositif), arrêté les frais judiciaires à 1'650 fr., les mettant à la charge de ces derniers, conjointement et solidairement, et les compensant avec les avances de frais fournies (ch. 2), condamné André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH, conjointement et solidairement, à payer à Valeska SIGREN BINDHOFF 1'000 fr. à titre de dépens (ch. 3), dit qu'il n'était pas alloué de dépens en faveur de BANQUE LOMBARD ODIER & CIE SA (ch. 4) et débouté les parties de toutes autres conclusions (ch. 5).

Le Tribunal a retenu que la requête visait principalement à garantir le paiement d'une éventuelle créance dans l'hypothèse où André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH obtenaient gain de cause dans des procédures à l'étranger, de sorte qu'il s'agissait d'un séquestre déguisé. Les précités n'avaient en outre pas rendu vraisemblable l'existence d'un préjudice difficilement réparable, le seul préjudice financier n'en étant pas un.

**B.**   **a.** Par acte expédié le 9 octobre 2023 au greffe de la Cour de justice (ci-après: la Cour), André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH appellent de cette décision, dont ils sollicitent l'annulation avec suite de frais judiciaires et dépens de première et deuxième instance.

Cela fait, ils concluent à ce que la Cour interdise tout acte de disposition sur le compte bancaire n° 112991 00 (IBAN : CH52 0876 0000 0112 9910 0) auprès de la BANQUE LOMBARD ODIER & CIE SA à Genève, sise rue de la Corraterie 11, 1204 Genève, sous la menace de la peine de l'art. 292 CP qui réprime l'insoumission à une décision de l'autorité, ordonne à ladite banque de bloquer tous les avoirs de quelque nature que ce soit, déposés sur le compte bancaire précité et dise que l'ordonnance rendue sur mesures provisionnelles déploiera ses effets jusqu'à reconnaissance en Suisse d'une décision exécutoire établissant la titularité du compte bancaire en question.

**b.** Dans sa réponse, Valeska SIGREN BINDHOFF conclut, avec suite de frais judiciaires et dépens, à ce que la Cour, à la forme, retire du dossier les pièces 24 à 29bis produites par André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH, déclare irrecevables les allégués n° 14 et 15 et 17 à 23 de l'appel, déclare irrecevable l'appel formé par ses adverses parties et, au fond, principalement, confirme l'ordonnance entreprise. Subsidiairement, elle conclut à ce que la Cour astreigne André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH, conjointement et solidairement, à fournir des

Exhibit 4 Page 743

sûretés à hauteur de 1'028'500 fr. dans un délai de dix jours à compter de la notification de l'arrêt de la Cour.

Elle produit des pièces envoyées au Tribunal le 26 septembre 2023, à savoir une déclaration conjointe de Mes Rodrigo AVILA OLIVER et Juan Pablo VERGARA SOTOMAYOR du 25 septembre 2023 avec ses annexes (pièce n° 53), une plainte pénale du 22 septembre 2023 (pièce n° 54), un courrier de Me Pierre DUCRET au Tribunal du 26 septembre 2023 (pièce n° 55) et un bordereau de pièces complémentaires du 26 septembre 2023 (pièce n° 56). Elle produit également de nouvelles pièces, à savoir un courrier de Me Pierre DUCRET à Me Serge CALAME du 6 octobre 2023 (pièce n° 57) et un état des avoirs du compte joint du 30 septembre 2023 (pièce n° 58).

**c.** Invitée à se déterminer, BANQUE LOMBARD ODIER & CIE SA s'en est rapportée à justice sur l'appel interjeté contre l'ordonnance litigieuse.

**d.** André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH ont répliqué, ce qui a entraîné une duplique de Valeska SIGREN BINDHOFF. Ils ont persisté dans leurs conclusions respectives.

**e.** Les parties ont été informées par plis du greffe de la Cour du 4 janvier 2024 de ce que la cause était gardée à juger.

**C.**    Il résulte de la procédure les éléments de faits pertinents suivants:

**a.** Jean-Jacques Gustave Paul BOISSIER (ci-après: Jean-Jacques BOISSIER), de nationalité suisse, est décédé le 8 novembre 2021 au Chili.

**b.** A son décès, il a laissé trois enfants, issus d'une première union, à savoir André BOISSIER, Natasha BOISSIER et Sergei BOISSIER, ainsi que son épouse, Valeska SIGREN BINDHOFF.

Valeska SIGREN BINDHOFF est mère de deux enfants, à savoir Maria Isabel ECHENIQUE SIGREN et Jorge Ignacio ECHENIQUE SIGREN, issus d'une précédente union.

**c.** La succession de feu Jean-Jacques BOISSIER a été ouverte au Chili et ses héritiers sont ses trois enfants et son épouse.

**d.** Feu Jean-Jacques BOISSIER a laissé des dispositions testamentaires aux Etats-Unis et au Chili.

**d.a** Selon l'article 3 du testament chilien du 24 décembre 2010, le "*quart de libre disposition*" ainsi que le "*quart d'améliorations*" de la succession sont dévolus à Valeska SIGREN BINDHOFF.

Exhibit 4 Page 744

L'article 4 désigne Valeska SIGREN BINDHOFF en qualité d'exécutrice testamentaire.

**d.b** A teneur du préambule du testament américain du 17 juin 2019, feu Jean-Jacques BOISSIER a révoqué tous les testaments et dispositions testamentaires précédents, exceptés les testaments et dispositions testamentaires relatifs à la cession de biens situés en dehors des Etats-Unis et exécutés conformément à la loi chilienne ou suisse.

Selon l'article 7 dudit testament, "*si Valeska SIGREN BINDHOFF lui survivait et était sa conjointe légitime au moment de son décès, il donnerait et lèguerait tout le reste, résiduel et restant de ses biens et de sa succession, meubles et immeubles, quel qu'en soit la nature ou l'emplacement, qu'il possédait ou dont il avait droit au moment de son décès (sa "succession résiduaire") à ses "QDOT Trustees", nommés ci-après EN FIDUCIE (connu sous le nom de VALESKA BOISSIER TRUST), qui serait détenu et administré aux fins décrites dans le reste de l'article. VALESKA BOISSIER TRUST serait maintenu et administré par les lois d'un état des Etats-Unis ou par le District de Columbia*".

Aux termes de l'article 12 du testament américain, feu Jean-Jacques BOISSIER a désigné deux de ses enfants, André BOISSIER et Natasha BOISSIER, ainsi que son avocat, David ROACH, en qualité d'exécuteurs testamentaires. Il a également nommé ce dernier ainsi que HSBC BANK USA, sise à Buffalo, New York, en qualité de "*QDOT Trustees*" du VALESKA BOISSIER TRUST.

**e.** De son vivant, feu Jean-Jacques BOISSIER était titulaire avec son épouse d'un compte joint n° 112991 00 (IBAN: CH52 0876 0000 0112 9910 0) ouvert auprès de BANQUE LOMBARD ODIER & CIE SA en 2006 (ci-après également : le compte joint).

Ce compte était notamment alimenté par des distributions de deux trusts, VALBOIS TRUST et DUBOIS TRUST, dont Valeska SIGREN BINDHOFF et feu Jean-Jacques BOISSIER étaient tous deux bénéficiaires du vivant de ce dernier et dont Valeska SIGREN BINDHOFF est l'unique bénéficiaire depuis le décès de son époux le 8 novembre 2021.

Les 3 janvier, 1er avril et 4 juillet 2022, les trustees de VALBOIS TRUST et DUBOIS TRUST ont effectué six versements sur le compte joint pour un montant total de 529'583.90 USD.

Les avoirs déposés sur le compte joint s'élevaient à 17'348'161 USD au 31 décembre 2022 et à 21'748'688 USD au 30 septembre 2023.

**f.** Aux termes du contrat de compte y relatif, "*chaque titulaire du compte joint a la faculté d'effectuer toutes opérations y relatives, en agissant individuellement et sans l'accord ni la participation du/des autre(s) titulaire(s) du compte, et en*

Exhibit 4 Page 745

*particulier d'effectuer tous actes de gestion d'administration et de disposition* […]" (art. 2 du contrat).

L'article 8 prévoit que "*le présent contrat ne s'éteindra pas par le décès d'un ou des titulaires* […]".

A teneur de l'article 10, "*en cas de décès de l'un des titulaires, les héritiers de celui-ci deviennent les successeurs juridiques du titulaire décédé*".

**g.** Depuis le décès de feu Jean-Jacques BOISSIER, ses quatre héritiers et les enfants de Valeska SIGREN BINDHOFF sont en litiges sur de nombreux points.

**g.a** Devant les autorités chiliennes, André BOISSIER, Natasha BOISSIER et Sergei BOISSIER ont contesté, en vain, la qualité d'exécutrice testamentaire de Valeska SIGREN BINDHOFF, puis tenté d'obtenir une reddition de compte. Ils ont également entamé une procédure tendant à faire constater l'indignité de Valeska SIGREN BINDHOFF, au motif qu'elle aurait caché aux autorités chiliennes l'existence du testament américain. La fille de Valeska SIGREN BINDHOFF, Maria Isabel ECHENIQUE SIGREN, a déposé une plainte pénale contre son frère pour gestion déloyale et détournement de fonds au préjudice de leur mère, ainsi qu'initié une procédure pour que sa mère soit déclarée incapable de discernement, qu'elle soit privée de ses droits d'administrer ses biens et qu'un curateur soit nommé à cette fin. Ces deux dernières procédures sont encore en cours. Dans le cadre de la plainte pénale précitée, Valeska SIGREN BINDHOFF a été entendue par un policier le 9 mai 2023.

**g.b** Aux Etats-Unis, André BOISSIER, Natasha BOISSIER et Sergei BOISSIER ont intenté, en vain, une procédure judiciaire afin de placer Valeska SIGREN BINDHOFF sous curatelle.

**h.** Par courrier du 17 février 2022, David ROACH s'est adressé à BANQUE LOMBARD ODIER & CIE SA, afin d'obtenir des informations et des relevés détaillés des comptes ouverts en ses livres au nom de feu Jean-Jacques BOISSIER ainsi que le blocage de ces derniers.

**i.** Par courriel du 3 mai 2022, BANQUE LOMBARD ODIER & CIE SA a accepté de transmettre les relevés du compte joint aux enfants du défunt.

**j.** Par courrier du 14 novembre 2022, Valeska SIGREN BINDHOFF a requis de BANQUE LOMBARD ODIER & CIE SA qu'elle lui transfère la moitié des actifs déposés sur le compte joint.

**k.** Par courrier du 18 novembre 2022, BANQUE LOMBARD ODIER & CIE SA a indiqué aux héritiers qu'elle exigerait une instruction de transfert conjointe pour pouvoir diviser les avoirs sur le compte joint, liquider la succession et transférer

les avoirs déposés. Elle n'exécuterait pas d'instruction dans ce sens sans l'accord des quatre héritiers, en particulier sachant qu'un litige existait entre eux.

**l.** Par courrier du 2 décembre 2022, Valeska SIGREN BINDHOFF a mis en demeure BANQUE LOMBARD ODIER & CIE SA de lui transférer la moitié des avoirs déposés sur le compte joint sur son compte personnel n° 112990 00 ouvert auprès de la même banque.

**m.** Le 6 décembre 2022, Valeska SIGREN BINDHOFF a saisi le Tribunal d'une demande en paiement à l'encontre de BANQUE LOMBARD ODIER & CIE SA (procédure n° C/24426/2022).

**D.** **a.a** Par acte déposé au greffe du Tribunal le 25 janvier 2023, André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH ont formé une requête de mesures provisionnelles à l'encontre de Valeska SIGREN BINDHOFF et de BANQUE LOMBARD ODIER & CIE SA, concluant, sous suite de frais et sous la menace de la peine prévue à l'article 292 CP, à ce que le Tribunal interdise tout acte de disposition sur le compte bancaire n° 112991 00 auprès de la BANQUE LOMBARD ODIER & CIE SA, ordonne à cette dernière de bloquer tous les avoirs de quelque nature que ce soit, déposés sur ledit compte et, principalement, dise que l'ordonnance rendue sur mesures provisionnelles déploierait ses effets jusqu'à reconnaissance en Suisse d'une décision exécutoire établissant la titularité du compte litigieux, subsidiairement, jusqu'à accord exprès de leur part ou droit jugé dans une action matérielle.

**a.b** A l'appui de leur requête, ils ont notamment fait valoir que la composition des actifs successoraux n'était pas encore définie avec certitude, le défunt ayant disposé de ses biens au Chili et à l'étranger selon des dispositions et testaments stipulant des solutions différentes. Ils avaient contesté la validité du testament chilien dans le cadre de procédures initiées tant au Chili qu'aux Etats-Unis et une audience était prochainement convoquée au Chili afin d'établir un inventaire des biens du défunt, de sorte qu'à l'issue de cette procédure il serait décidé si le compte ouvert auprès de BANQUE LOMBARD ODIER & CIE SA faisait ou non partie de la masse successorale.

Dans l'intervalle, la banque s'était engagée à ne pas exécuter d'instruction qui n'émanerait pas de l'ensemble des héritiers. Or, le 2 décembre 2022, Valeska SIGREN BINDHOFF avait mis BANQUE LOMBARD ODIER & CIE SA en demeure de lui transférer la moitié des avoirs déposés sur le compte joint sur son compte personnel puis avait ouvert action contre la banque. Dans ces circonstances, et étant relevé que Valeska SIGREN BINDHOFF était incapable de discernement depuis quelques temps, il se justifiait de figer urgemment le compte joint en attendant l'issue des procédures pendantes au Chili et aux Etats-Unis, lesquelles permettraient de clarifier les différents aspects de la succession et notamment le statut du compte. Dans l'hypothèse où le compte devait tomber dans

Exhibit 4 Page 747

la masse successorale du défunt, l'exécution des instructions de Valeska SIGREN BINDHOFF impliquerait une atteinte indéniable aux droits successoraux d'héritiers réservataires. Le recouvrement d'actifs soustraits à tort s'avèrerait quasiment impossible, compte tenu de l'incapacité de discernement de Valeska SIGREN BINDHOFF, de son domicile au Chili et des influences qu'elle pourrait subir de son entourage.

**b.** Aux termes de ses déterminations du 20 mars 2023, BANQUE LOMBARD ODIER & CIE SA s'en est rapportée à justice et a requis qu'aucun frais ni dépens ne soit mis à sa charge. Elle a également relevé qu'elle n'avait pas pour habitude de ne pas se conformer aux décisions de justice la concernant, qu'un ordre permanent de 7'000 USD en faveur de Valeska SIGREN BINDHOFF était débité du compte litigieux, ce dont André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH étaient informés, que la banque s'acquittait également de frais relatifs à des tombes de la famille de feu Jean-Jacques BOISSIER en 950 fr. par an et qu'elle devait également pouvoir débiter ses frais, notamment de tenue de compte.

**c.a** Dans sa réponse du 10 août 2023, Valeska SIGREN BINDHOFF a conclu, sous suite de frais, au rejet de la requête et subsidiairement, à ce qu'André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH soient astreints à fournir des sûretés à hauteur de 825'500 fr. dans un délai de dix jours, sous peine de rejet de leur requête de mesures provisionnelles.

**c.b** En substance, elle a contesté les allégations d'André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH relatives à sa prétendue incapacité de discernement et fait valoir qu'en sa qualité de titulaire du compte joint, elle avait la faculté d'effectuer toutes opérations y relatives, en agissant individuellement, même sans l'accord ni la participation de l'autre titulaire, conformément au contrat du 18 septembre 2006. Elle était, avec feu son époux, ayant droit économique de la moitié des avoirs versés sur le compte joint qui provenaient de trusts dont ils étaient tous deux bénéficiaires. Au décès de son époux, elle était devenue l'unique bénéficiaire des trusts, lesquels avaient continué à lui verser des revenus sur le compte joint, à son seul bénéfice. Elle n'avait toutefois pas pu obtenir de BANQUE LOMBARD ODIER & CIE SA la restitution, sur son compte personnel, desdits montants. Elle était ainsi bénéficiaire de plus de la moitié des actifs en compte, dont elle était libre de disposer et sur lesquels André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH ne pouvaient faire valoir aucune prétention.

Aux termes du testament chilien rédigé par feu Jean-Jacques BOISSIER, Valeska SIGREN BINDHOFF avait été instituée héritière à hauteur de 70% de la succession. Le testament américain subséquent ne remettait pas en cause ces dispositions. Dans ces circonstances, elle avait mis BANQUE LOMBARD

Exhibit 4 Page 748

ODIER & CIE SA en demeure le 2 décembre 2022 de lui transférer la moitié des avoirs du compte joint sur son compte personnel puis, au vu du refus de cette dernière de s'exécuter, elle avait été contrainte d'intenter une action à son encontre.

Selon elle, la mesure requise par André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH constituait un séquestre déguisé en tant qu'elle visait des créances à l'encontre de BANQUE LOMBARD ODIER & CIE SA faisant partie de la succession. Les conditions relatives au prononcé de mesures provisionnelles n'étaient de surcroît pas réalisées. André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH ne rendaient pas vraisemblable une quelconque prétention de droit matériel ou une atteinte à une telle prétention. Ils échouaient à rendre vraisemblable sa prétendue insolvabilité ou les difficultés liées à son domicile à l'étranger pour recouvrer les montants qui leur seraient éventuellement dus.

Dans l'hypothèse où il serait fait droit à la requête, André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH devraient être astreints à verser des sûretés en 825'500 fr. correspondant à la perte d'intérêts pendant la durée de la procédure au fond ainsi qu'aux frais de recouvrement y relatifs, estimés à 50'000 fr.

**d.** Le Tribunal a entendu les parties lors de l'audience du 18 septembre 2023 lors de laquelle André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH ont produit des pièces complémentaires, notamment des déclarations de diverses personnes devant la police chilienne (pièces n° 24 à 29bis).

Au terme de l'audience, les parties ont plaidé, persistant dans leurs conclusions respectives, et le Tribunal a gardé la cause à juger.

**e.** Le 22 septembre 2023, Jorge Ignacio ECHENIQUE SIGREN a déposé plainte pénale au Chili notamment à l'encontre de sa sœur ainsi que des enfants de feu Jean-Jacques BOISSIER pour possession et utilisation, dans une procédure de nature civile, de déclarations auprès d'un policier qui ne ressortent d'aucun dossier pénal.

**f.** Par courrier du 26 septembre 2023, Valeska SIGREN BINDHOFF a requis du Tribunal qu'il écarte du dossier les pièces 24 à 29bis, celles-ci soit étant constitutives de faux soit ayant été obtenues de manière illicite. Elle a produit un chargé de pièces complémentaires comprenant une déclaration conjointe de Mes Rodrigo AVILA OLIVER et Juan Pablo VERGARA SOTOMAYOR avec ses annexes (pièce n° 53) et une plainte pénale déposée le 22 septembre 2023 par Jorge Ignacio ECHENIQUE SIGREN à l'encontre notamment d'Isabel ECHENIQUE SIGREN, Natasha BOISSIER, André BOISSIER et Sergei BOISSIER (pièce n° 54).

Exhibit 4 Page 749

## EN DROIT

1.    **1.1** L'appel est recevable contre les décisions de première instance sur mesures provisionnelles (art. 308 al. 1 let. b CPC). Dans les affaires patrimoniales, il est recevable si la valeur litigieuse au dernier état des conclusions est de 10'000 fr. au moins (art. 308 al. 2 CPC).

La décision querellée est une décision de rejet de mesures provisionnelles. Compte tenu des actifs litigieux, la valeur litigieuse de 10'000 fr. est largement atteinte. La voie de l'appel est ouverte.

**1.2** Interjeté dans le délai de 10 jours et la forme prescrits (art. 142 al. 1, 248 let. d, 311 al. 1 et 314 al. 1 CPC), par des personnes ayant un intérêt digne de protection (art. 59 al. 1 et 2 let. a CPC), l'appel est recevable. Il en va de même de la réponse, de la réplique et de la duplique (art. 314 al. 1 et 316 al. 2 CPC).

Valeska SIGREN BINDHOFF sera désignée ci-après comme l'intimée n° 1 et BANQUE LOMBARD ODIER & CIE SA comme l'intimée n° 2.

**1.3** L'appel peut être formé pour violation du droit (art. 310 let. a CPC) et constatation inexacte des faits (art. 310 let. b CPC). Le juge d'appel dispose d'un plein pouvoir d'examen de la cause en fait et en droit. Les mesures provisionnelles étant soumises à la procédure sommaire (art. 248 let. d CPC), la Cour peut toutefois s'en tenir à la vraisemblance des faits allégués et à un examen sommaire du droit (ATF 127 III 474 consid. 2b/bb, JdT 2002 I 352; arrêt du Tribunal fédéral 5A_12/2013 du 8 mars 2013 consid. 2.2).

Les maximes des débats (art. 55 al. 1 CPC et 255 CPC *a contrario*) et de disposition (art. 58 al. 1 CPC) sont applicables.

**1.4** L'état de fait ci-dessus a été complété dans la mesure utile, de sorte qu'il n'y a pas lieu d'examiner plus avant les griefs des appelants tirés d'une constatation inexacte des faits par le Tribunal.

**1.5.1** En raison du domicile des parties, la cause revêt un caractère international (ATF 136 III 142 consid. 3.2; 132 III 609 consid. 4).

Le juge suisse saisi examine d'office sa compétence ainsi que la question du droit applicable au litige, sur la base du droit international privé suisse en tant que *lex fori* (ATF 136 III 142 consid. 3.2; 135 III 259 consid. 2.1; 133 III 37 consid. 2).

En l'absence de convention internationale, il y a lieu, pour statuer sur ces aspects, de se référer à la loi fédérale sur le droit international privé (LDIP).

A teneur de l'art. 10 let. b LDIP sont compétents pour prononcer des mesures provisoires les tribunaux du lieu de l'exécution de la mesure, pour autant que celle-ci soit urgente et nécessaire (ATF 134 III 326; ACJC/1110/2012 du

8 août 2012 consid. 4.1; BUCHER, Commentaire romand LDIP/CL, 2011, n. 18 *ad* art. 10 LDIP).

Les dispositions de la LDIP ne précisent pas selon quelle loi les mesures provisoires doivent être examinées (BUCHER, *op. cit.*, n. 7 ss *ad* art. 10 LDIP). Il n'est pas arbitraire d'appliquer le droit suisse lorsque l'affaire est urgente, notamment en matière de séquestre (arrêts du Tribunal fédéral 5A_60/2013 du 27 mai 2013 consid. 3.2.1.2; 5A_259/2010 du 26 avril 2012 consid. 7.3.2.2; 5P.355/2006 du 8 novembre 2006 consid. 4.2).

**1.5.2** En l'espèce, les mesures requises tendent notamment au blocage d'avoirs détenus par l'intimée n° 1 auprès d'un établissement genevois, de sorte que le lieu d'exécution se situe à Genève. Ces mesures apparaissent *prima facie* revêtir un caractère urgent et nécessaire. En effet, il conviendrait d'éviter que, dans l'hypothèse où il serait fait droit au fond à la prétention des appelants, ceux-ci ne puissent plus obtenir les fonds.

Par conséquent, c'est à juste titre que le Tribunal a admis sa compétence *rationae loci* et *rationae materiae* (art. 86 al. 1 et al. 2 let. a et c LOJ). Le premier juge a par ailleurs à juste titre appliqué le droit suisse s'agissant des conditions relatives au prononcé de mesures provisionnelles.

**2.**   L'intimée n° 1 a produit des pièces nouvelles et allégué des faits nouveaux. Elle expose que ceux-ci reprennent les pièces et allégués qu'elle a fait valoir dans son courrier du 26 septembre 2023 au Tribunal en réponse aux nombreuses pièces complémentaires produites par les appelants lors de l'audience du 18 septembre 2023.

Les appelants ont également allégué des faits nouveaux. L'intimée n° 1 requiert que les allégués n° 14 et 15 et 17 à 23 de l'appel soient déclarés irrecevables.

**2.1** Selon l'art. 317 al. 1 CPC, les faits et les moyens de preuve nouveaux ne sont pris en considération en appel que s'ils sont invoqués ou produits sans retard (let. a) et s'ils ne pouvaient être invoqués ou produits devant la première instance bien que la partie qui s'en prévaut ait fait preuve de la diligence requise (let. b).

**2.1.1** Les pseudo nova sont des faits et moyens de preuve qui étaient déjà survenus lorsque les débats principaux de première instance ont été clôturés. Leur admissibilité est largement limitée en appel, dès lors qu'ils sont irrecevables lorsqu'en faisant preuve de la diligence requise, ils auraient déjà pu être invoqués dans la procédure de première instance. Il appartient au plaideur d'exposer en détails les motifs pour lesquels il n'a pas pu le présenter en première instance déjà (ATF 143 III 42 consid. 4.1; arrêt du Tribunal fédéral 5A_1006/2017 du 5 février 2018 consid. 3.3).

Les pièces nouvelles ne sont pas recevables en appel pour la seule raison qu'elles ont été émises postérieurement au prononcé de la décision attaquée. La question à laquelle il faut répondre pour déterminer si la condition de l'art. 317 al. 1 CPC est remplie est celle de savoir si le moyen de preuve n'aurait pas pu être obtenu avant la clôture des débats principaux de première instance (arrêt du Tribunal fédéral 5A_266/2015 du 24 juin 2015 consid. 3.2.2 et 3.2.3).

**2.1.2** La procédure sommaire est introduite par une requête (art. 252 al. 1 CPC). Lorsque la requête ne paraît pas manifestement irrecevable ou infondée, le tribunal donne à la partie adverse l'occasion de se déterminer oralement ou par écrit (art. 253 CPC).

La réponse doit être transmise au requérant. Celui-ci a la possibilité de prendre position sur les arguments du défendeur en vertu de son droit de réplique (ATF 144 III 117 consid. 1; BOHNET, Commentaire romand, CPC, 2ème éd., 2019, n. 9 *ad* art. 253 CPC).

Dans la procédure sommaire, aucune des parties ne doit cependant s'attendre à ce que le tribunal ordonne un deuxième échange d'écritures ou des débats oraux après une première audition. Dans cette mesure, les parties n'ont pas le droit de s'exprimer deux fois sur le fond. En principe, la clôture du dossier intervient après une seule prise de position (ATF 144 III 117 consid. 2.2).

Il s'ensuit que le requérant doit proposer toutes ses preuves avec sa requête (BOHNET, *op. cit.*, n. 9 *ad* art. 252 CPC). Ce n'est que si une audience a lieu après un premier échange d'écritures ou si un second échange d'écritures est ordonné que le Tribunal fédéral et certains auteurs admettent que des faits nouveaux et des offres de preuve nouvelles peuvent encore être introduits au début des débats principaux, par application analogique de l'art. 229 CPC (ATF 144 III 117 consid. 2.2; BOHNET, *ibidem*).

Cela ne change cependant rien au fait que les parties ont le droit de se déterminer, dans un délai approprié, sur tout acte du tribunal ou de la partie adverse, indépendamment du fait que celui-ci contienne ou non des éléments nouveaux et importants (arrêt du Tribunal fédéral 5A_82/2015 du 16 juin 2015 consid. 4.1). Toutefois, ce droit de réplique inconditionnel permet de préciser, voire de compléter, ses arguments, mais pas de présenter des nouveaux allégués ou offres de preuve. En ce cas, ces nova sont écartés du dossier, la réplique n'étant prise en considération que pour le reste (arrêt du Tribunal fédéral 4A_557/2017 du 21 février 2018 consid. 2.1 à 2.3).

Pour que le droit de réplique soit garanti, il faut que le tribunal laisse un laps de temps suffisant à la partie concernée, entre la remise de la prise de position ou des pièces nouvelles et le prononcé de sa décision, pour qu'elle ait la possibilité de déposer des observations si elle l'estime nécessaire à la défense de ses intérêts.

Selon la jurisprudence, le délai d'attente sur lequel doit compter le tribunal ne saurait, en règle générale, être inférieur à dix jours ni supérieur à celui pour recourir. Ce délai d'attente comprend le temps nécessaire au plaideur pour faire parvenir son éventuelle réplique au tribunal (arrêts du Tribunal fédéral 5D_112/2013 du 15 août 2013 consid. 2.2.3; 5A_750/2016 du 15 novembre 2016 consid. 2.1).

**2.2.1** En l'espèce, les faits nouveaux allégués et les pièces n° 53 à 56 produites par l'intimée n° 1 dans le cadre de la réponse à l'appel correspondent aux faits nouveaux et pièces nouvelles transmis au Tribunal le 26 septembre 2023, soit après que la cause ait été gardée à juger par le Tribunal. Ces allégations et pièces nouvelles sont en relation avec les pièces complémentaires produites par les appelants lors de l'audience de débats du 18 septembre 2023 et n'auraient pas pu être formées, respectivement produites, avant cette dernière date. Il s'agit ainsi de vrais novas.

Ces faits et moyens de preuve nouveaux ont croisé l'ordonnance querellée, datée du 26 septembre 2023, ce alors même que le délai du droit inconditionnel à la réplique de dix jours au minimum n'avait pas encore expiré.

Les pièces nouvelles n° 53 à 56 et les faits nouveaux y relatifs sont dès lors recevables.

S'agissant des pièces n° 57 et 58, elles sont postérieures à la mise en délibération de la cause par le Tribunal, n'auraient pas pu être produites devant celui-ci et ont été versées à la procédure à la première occasion utile. Elles sont ainsi recevables, de même que les faits qui s'y rapportent.

**2.2.2** Les allégués nouveaux des appelants, les allégués n° 14 et 15 de l'appel résument les allégués n° 7 à 13 de la requête de mesures provisionnelles. Il ne s'agit dès lors pas de faits nouveaux. Ces allégués sont partant recevables, tout comme les allégués n° 1 à 13 et 16, dont la recevabilité n'est pas contestée.

Quant aux allégués n° 17 à 23 de l'appel, ils se réfèrent aux pièces n° 24 à 29bis que les appelants ont produites en première instance lors de l'audience de débats du 18 septembre 2023. Ils n'ont en revanche pas été allégués en première instance. Par conséquent, ces faits nouveaux sont des faux novas. Ils auraient pu et dû faire l'objet d'allégués nouveaux introduits devant le premier juge. Allégués pour la première fois en appel, ils sont tardifs et donc irrecevables.

**3.** L'intimée n° 1 sollicite que les pièces n° 24 à 29bis produites par les appelants soient écartées du dossier au motif qu'elles auraient été obtenues de manière illicite.

Exhibit 4 Page 753

**3.1** Selon l'art. 152 al. 2 CPC, le tribunal ne prend en considération les moyens de preuve obtenus de manière illicite que si l'intérêt à la manifestation de la vérité est prépondérant.

Cette règle vise tant la preuve obtenue en violation d'une norme de droit matériel, qui protège le bien juridique lésé contre l'atteinte en cause, que celle recueillie en violation d'une règle de procédure (ATF 140 III 6 consid. 3.1).

La jurisprudence précise que l'utilisation de preuves dites illicites n'est pas exclue en toutes circonstances mais qu'il y a lieu de procéder à une pesée des intérêts en présence. Le juge doit procéder à une pesée de l'intérêt à la protection du bien lésé par l'obtention illicite et de l'intérêt à la manifestation de la vérité (ATF 140 III 6 consid. 3.1).

A titre d'exemple et en s'appuyant sur la jurisprudence du Tribunal fédéral et de la CourEDH, le législateur cite le titre obtenu sous la menace ou par la violence, pour lequel l'intégrité personnelle prime en principe l'intérêt à la manifestation de la vérité. Il nomme également la pièce "*simplement*" dérobée qui, elle, peut par contre être utilisée si l'établissement de la vérité l'exige (Message du Conseil fédéral du 28 juin 2006 relatif au code de procédure civile suisse, *in* FF 2006 p. 6841 ss, spéc. 6922 s.; CHABLOZ/COPT, Petit Commentaire du Code de procédure civile, 2021, n. 15 *ad* art. 152 CPC).

Il est ainsi généralement admis que l'intégrité physique, psychique ou spirituelle a plus de poids que les valeurs matérielles telles que la propriété ou la possession (CHABLOZ/COPT, *op. cit.*, n. 15 *ad* art. 152 CPC).

Le bien juridique protégé par les infractions du droit pénal relatives aux titres est la confiance qui, dans les relations juridiques, est placée dans un titre comme moyen de preuve, nommée *publica fides*. L'art. 251 CP protège également, médiatement, les intérêts des particuliers qui sont potentiellement lésés par l'utilisation d'un titre trompeur (KINZER, Commentaire romand, Code pénal II, n. 3 *ad* art. 251 CP).

Celui qui se prévaut de l'illicéité de l'obtention du moyen de preuve a la charge de la preuve. Autrement dit, il n'appartient pas à l'autre partie de démontrer la licéité de l'obtention du moyen de preuve (arrêt du Tribunal fédéral 5A_643/2020 du 11 septembre 2020 consid. 4.4).

**3.2** En l'espèce, il n'est pas rendu vraisemblable que les pièces litigieuses aient été obtenues par les appelants de manière illicite. En particulier, ce n'est pas parce que le fils de l'intimée n° 1 a déposé plainte pénale au Chili pour possession et utilisation dans une procédure civile de déclarations devant un officier de police qui ne ressortent d'aucun dossier pénal dans cet Etat ou encore que les avocats de l'intimée n° 1 aient rédigé une déclaration conjointe dans ce sens le

25 septembre 2023, que l'infraction est réalisée, aucune condamnation n'étant rendue vraisemblable et aucun document officiel constatant dite infraction n'ayant été versée au dossier.

Même à supposer que ces pièces aient été obtenues de manière illicite ou qu'elles constituent, comme le soutient l'intimée n° 1, des faux dans les titres, l'intérêt à la manifestation de la vérité apparaît prépondérant dans le cas d'espèce. En effet, l'intérêt à pouvoir déterminer la capacité de discernement de l'intimée n° 1 – objet principal sur lequel portent les pièces litigieuses – prime sur le moyen d'obtention desdites pièces, celles-ci n'ayant en tout état pas été obtenues par une atteinte à l'intégrité physique, psychique ou spirituelle. De même, l'intérêt à la manifestation de la vérité prime sur l'intérêt de l'intimée n° 1 qui serait potentiellement lésée par l'utilisation de ces pièces.

Partant, il n'y a pas lieu d'écarter les pièces litigieuses du dossier.

4.    Les appelants reprochent au Tribunal d'avoir retenu que leur requête de mesures provisionnelles s'apparentait à un "*séquestre déguisé*". Leur prétention serait matérielle puisque, selon eux, l'article 7 du testament américain prévoit la constitution du VALESKA BOISSIER TRUST au moyen de la "*succession résiduaire*" de feu Jean-Jacques BOISSIER et que le compte joint en ferait intégralement partie.

Ils soutiennent également que puisque les mesures requises n'auraient qu'un faible impact sur les droits et la situation de l'intimée n° 1, l'appréciation de l'existence du droit matériel invoqué et des conditions des mesures provisionnelles devrait être plus souple.

Les appelants reprochent également au Tribunal d'avoir retenu qu'ils n'avaient pas rendu vraisemblable le caractère difficilement réparable du dommage qu'ils invoquaient. Le fait de devoir intenter un procès en dommages-intérêts, ajouté au fait que l'intimée n° 1 était domiciliée à l'étranger, d'un âge avancé et susceptible d'être manipulée leur causerait un préjudice difficilement réparable.

**4.1.1** Selon l'art. 261 al. 1 CPC, le juge ordonne les mesures provisionnelles nécessaires lorsque le requérant rend vraisemblable qu'une prétention dont il est titulaire est l'objet d'une atteinte ou risque de l'être (let. a) et que cette atteinte risque de lui causer un préjudice difficilement réparable (let. b). Il s'agit là de conditions cumulatives (BOHNET, Commentaire romand CPC, 2ème éd. 2019, n. 3 *ad* art. 261 CPC).

L'octroi de mesures provisionnelles suppose la vraisemblance du droit invoqué et des chances de succès du procès au fond, ainsi que la vraisemblance, sur la base d'éléments objectifs, qu'un danger imminent menace le droit du requérant, enfin la vraisemblance d'un préjudice difficilement réparable, ce qui implique une urgence

Exhibit 4 Page 755

(Message du Conseil fédéral du 28 juin 2006 relatif au code de procédure civile suisse, *in* FF 2006 p. 6841 ss, spéc. 6961; BOHNET, *op. cit.*, n. 3 ss *ad* art. 261 CPC).

Le juge doit ainsi notamment évaluer les chances de succès de la demande au fond, et admettre ou refuser la mesure selon que l'existence du droit allégué apparaît plus vraisemblable que son inexistence. Lorsqu'il peut ainsi statuer sur la base de la simple vraisemblance, le juge n'a pas à être persuadé de l'exactitude des allégations du requérant, mais il suffit que, sur la base d'éléments objectifs, il acquière l'impression que les faits pertinents se sont produits, sans qu'il doive exclure pour autant la possibilité qu'ils se soient déroulés autrement; quant aux questions de droit, il peut se contenter d'un examen sommaire (arrêts du Tribunal fédéral 4A_508/2012 du 9 janvier 2013 consid. 4.2 et 5P.422/2005 du 1ᵉʳ juin 2006 consid. 3).

Le requérant doit rendre vraisemblable qu'il s'expose, en raison de la durée nécessaire pour rendre une décision définitive, à un préjudice qui ne pourrait pas être entièrement supprimé même si le jugement à intervenir devait lui donner gain de cause. En d'autres termes, il s'agit d'éviter d'être mis devant un fait accompli dont le jugement ne pourrait pas complètement supprimer les effets (arrêts du Tribunal fédéral 4A_50/2019 du 28 mai 2019 consid. 6.6.2; 4A_611/2011 du 3 janvier 2012 consid. 4.1). Est difficilement réparable le préjudice matériel, patrimonial ou immatériel qui sera plus tard impossible ou difficile à mesurer ou à compenser entièrement (ATF 138 III 378 consid. 6.3).

Le juge doit procéder à une pesée des intérêts entre les deux préjudices difficilement réparables, celui du demandeur à l'action si la mesure n'était pas exécutée immédiatement et celui qu'entraînerait pour le défendeur l'exécution de cette mesure (*ibidem*).

La simple exécution de créances d'argent n'emporte pas en soi un dommage difficilement réparable dans la mesure où la personne concernée peut en obtenir la restitution si elle obtient finalement gain de cause (ATF 138 III 333 consid. 1.3.1; arrêts du Tribunal fédéral 5A_143/2012 du 9 mai 2012 consid. 2.2.1; 5D_52/2010 du 10 mai 2010 consid. 1.1.1 *in* SJ 2011 I p. 134).

**4.1.2** Selon l'art. 262 CPC, le Tribunal peut ordonner toute mesure provisionnelle propre à prévenir ou à faire cesser le préjudice, notamment les mesures suivantes : l'interdiction (let. a), l'ordre de cessation d'un état de fait illicite (let. b), l'ordre donné à une autorité qui tient un registre ou à un tiers (let. c), la fourniture d'une prestation en nature (let. d) ou le versement d'une prestation en argent, lorsque la loi le prévoit (let. e).

Selon l'art. 263 CPC, si l'action au fond n'est pas encore pendante, le tribunal impartit au requérant un délai pour le dépôt de la demande, sous peine de caducité des mesures ordonnées.

L'art. 269 CPC réserve diverses dispositions d'autres lois en matière de mesures provisionnelles. La Loi fédérale sur la poursuite pour dettes et la faillite (RS 281.1; ci-après: LP) constitue l'exception principale.

La garantie provisoire de dettes d'argent est réglée par les art. 271 ss LP relatifs au séquestre et il ne peut être prononcé de mesures provisionnelles pour protéger les créances pécuniaires à titre provisoire ("*séquestre déguisé*"; ATF 86 II 291 consid. 2; 108 II 180 consid. 2; arrêts du Tribunal fédéral 5D_54/2008 du 23 juin 2008 consid. 2.3 et 5A_853/2013 du 23 mai 2014 consid. 2.2.3 et 3.3). Le champ d'application des mesures provisionnelles conservatoires est donc en principe limité à la protection des droits réels ou personnels dont la nature n'est pas pécuniaire (arrêts du Tribunal fédéral 5A_853/2013 du 23 mai 2014 consid. 2.2.3 et 3.3 et 5A_852/2010 du 28 mars 2011 consid. 3.1; Hohl, Procédure civile, tome II, 2010, n. 1747 s.).

La Cour a eu l'occasion de juger qu'une interdiction faite à un tiers, soit une banque, de donner suite à toute instruction de transfert ou de disposition relative à tout compte détenu par une partie dont les droits successoraux et la fonction d'exécuteur testamentaire étaient contestés, ne tendaient pas à obtenir une garantie pour le recouvrement d'une éventuelle créance mais visait à immobiliser des biens, sous contrôle de ladite partie (en sa qualité d'exécuteur testamentaire), mais susceptibles d'entrer dans la masse successorale faisant l'objet de la mission d'exécuteur testamentaire litigieuse à l'étranger, de sorte qu'une telle mesure ne constituait pas un "*séquestre déguisé*" (ACJC/903/2021 du 8 juillet 2021 consid. 3.1.2; ACJC/521/2019 du 4 avril 2019 consid. 7.2).

**4.2** En l'espèce, il y a lieu d'examiner si les conditions pour le prononcé de mesures provisionnelles, tendant au blocage d'un compte bancaire et à une interdiction faite aux intimées de procéder ou de faire procéder à un transfert d'avoirs, sont réunies.

**4.2.1** Selon les appelants, la requête de mesures provisionnelles ne serait pas un "*séquestre déguisé*", puisque le compte joint constituerait un objet mobilier qu'il y aurait lieu de protéger afin de garantir son intégration dans le trust une fois celui-ci constitué. *Prima facie*, les testaments litigieux ne permettent pas de retenir ce cas de figure.

En effet, certes le testament américain révoque toutes les dispositions testamentaires antérieures dont le testament chilien fait partie. Cela étant, le testament américain réserve également dans le préambule "*les testaments et dispositions testamentaires relatifs à la cession de biens situés en dehors des*

Exhibit 4 Page 757

*Etats-Unis et exécutés conformément à la loi chilienne ou suisse*". Ainsi, il faut comprendre que le testament américain ne s'applique pas aux biens situés en Suisse, dont le compte joint fait partie. Le fait que le *de cujus* ait précisé à l'article 7 du testament américain que le VALESKA BOISSIER TRUST réunirait l'ensemble des biens restants "*quel qu'en soit la nature ou l'emplacement*" peut et doit ainsi être interprété à la lumière du préambule précité, à savoir qu'il devra réunir uniquement le reste des avoirs situés aux Etats-Unis. Le compte joint étant situé en Suisse, il ne semble pas faire partie des avoirs qui devront être intégrés dans le trust précité. Il s'agit ainsi d'un compte bancaire dont la dévolution sera vraisemblablement réglée à la lumière du testament chilien.

Les appelants n'ont ainsi qu'une prétention d'ordre pécuniaire à faire valoir contre l'intimée n° 1 tendant au partage du compte joint.

C'est, par conséquent, à juste titre que le Tribunal a retenu que la requête des appelants constituait un "*séquestre déguisé*" et que les appelants devaient ainsi être déboutés de leur requête.

Ceci suffit à sceller le sort de l'appel et à confirmer l'ordonnance entreprise.

**4.2.2** A titre superfétatoire, il y a lieu d'ajouter, comme retenu par le premier juge, que ni une atteinte à la prétention des appelants ni un préjudice difficilement réparable n'ont été rendus vraisemblables par les appelants.

En effet, l'incapacité de discernement de l'intimée n° 1 n'est pas rendue vraisemblable, aucune des deux procédures intentées par les appelants aux fins de nommer un curateur en sa faveur n'ayant abouti et aucune autre pièce au dossier ne permettant de constater une telle incapacité. Les déclarations écrites devant la police chilienne produites par les appelants le 18 septembre 2023 constituent, pour certaines, de simples allégations de parties (*cf.* pièces n° 24 à 25bis) et, pour d'autres, n'émanent pas de professionnels du domaine médical (*cf.* pièces n° 26 à 29bis). Ils ne sont ainsi pas susceptibles d'attester d'une incapacité de discernement de l'intimée. En revanche, il ressort du dossier que l'intimée n° 1 a pu témoigner le 9 mai 2023 devant la police chilienne dans le cadre de la procédure pénale initiée par sa fille contre son fils. Si elle n'avait pas été capable de discernement, elle n'aurait vraisemblablement pas pu témoigner. Il ne saurait ainsi être retenu, sans autre élément de preuve, que le fils de l'intimée n° 1 exploiterait la faiblesse de sa mère pour ses propres intérêts, au détriment des intérêts de sa mère et de sa sœur.

Par ailleurs, le fait que l'intimée n° 1 soit domiciliée au Chili ne permet pas, à lui seul, de constater qu'une éventuelle procédure intentée contre elle, que ce soit en partage de la succession ou en paiement de dommages-intérêts, serait à ce point compliquée et/ou particulièrement longue qu'elle créerait un préjudice difficilement réparable aux appelants. En effet, dans toutes les procédures

Exhibit 4 Page 758

intentées jusqu'à ce jour par les appelants contre l'intimée n° 1, que ce soit aux Etats-Unis, au Chili ou encore en Suisse, celle-ci a pris une part active ou s'est faite représenter.

De plus, il n'est pas non plus rendu vraisemblable ni que l'intimée n° 1 tenterait de soustraire des avoirs appartenant à la succession ni qu'elle serait insolvable. En effet, le fait de demander à l'intimée n° 2 le versement sur son compte personnel de la moitié du compte joint, alors même que l'intimée n° 1 allègue pouvoir prétendre, à teneur du testament chilien, à 70 % de la succession (20% s'agissant de sa part réservataire + 25% de "*quart de libre disposition*" + 25% de "*quart d'améliorations*") en sus de la moitié du compte lui revenant, soit au moins 85% des avoirs totaux déposés sur ce compte, laisse plutôt penser qu'elle n'entend justement pas soustraire des actifs à la succession mais uniquement récupérer ce qui lui appartient de plein droit, à savoir sa part en tant que co-titulaire du compte joint.

Enfin, comme l'a retenu le Tribunal, l'insolvabilité de l'intimée n° 1 n'est pas non plus rendu vraisemblable. Si elle était condamnée à payer un montant en faveur des appelants, il n'est pas rendu vraisemblable qu'elle ne serait pas en mesure de s'en acquitter.

A la lumière des éléments qui précèdent, c'est à juste titre que le Tribunal a retenu que les conditions pour le prononcé de mesures provisionnelles tendant au blocage du compte joint n'étaient pas réunies et que les appelants devaient être déboutés de leurs conclusions.

L'ordonnance querellée doit ainsi être confirmée pour cette raison également.

5.  **5.1** Les frais judiciaires d'appel seront arrêtés à 1'440 fr. (art. 26 et 37 RTFMC), mis à la charge des appelants, qui succombent intégralement (art. 106 al. 1 CPC) et compensés avec l'avance effectuée, acquise à l'Etat de Genève (art. 111 al. 1 CPC).

    **5.2** Les appelants seront condamnés, conjointement et solidairement, à verser à l'intimée n° 1, 1'500 fr. à titre de dépens d'appel, débours compris et sans TVA, l'intimée n° 1 ayant son domicile à l'étranger (arrêt du Tribunal fédéral 4A_623/2015 du 3 mars 2016; art. 84, 85, 88 et 90 RTFMC; art. 23 al. 1, 25 et 26 LaCC).

    Il ne sera pas alloué de dépens à l'intimée n° 2, celle-ci n'en réclamant pas.

* * * * *

Exhibit 4 Page 759

## PAR CES MOTIFS,

### La Chambre civile :

**À la forme :**

Déclare recevable l'appel interjeté le 9 octobre 2023 par André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH contre l'ordonnance OTPI/596/2023 rendue le 26 septembre 2023 par le Tribunal de première instance dans la cause C/1179/2023-16 SP.

**Au fond :**

Confirme l'ordonnance entreprise.

Déboute les parties de toutes autres conclusions.

**Sur les frais d'appel :**

Arrête les frais judiciaires d'appel à 1'440 fr., les met à la charge d'André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH, conjointement et solidairement, et les compense avec l'avance de frais fournie, qui reste acquise à l'Etat de Genève.

Condamne André BOISSIER, Natasha BOISSIER, Sergei BOISSIER et David ROACH à payer, conjointement et solidairement, 1'500 fr. à Valeska SIGREN BINDHOFF au titre de dépens d'appel.

Dit qu'il n'est pas alloué de dépens d'appel à BANQUE LOMBARD ODIER & CIE SA.

**Siégeant :**

Monsieur Laurent RIEBEN, président; Madame Fabienne GEISINGER-MARIETHOZ, Monsieur Ivo BUETTI, juges; Madame Mélanie DE RESENDE PEREIRA, greffière.

Pour communication conforme
Le greffier :

*Indication des voies de recours* :

*Conformément aux art. 72 ss de la loi fédérale sur le Tribunal fédéral du 17 juin 2005 (LTF; RS 173.110), le présent arrêt peut être porté dans les trente jours qui suivent sa notification avec expédition complète (art. 100 al. 1 LTF) par-devant le Tribunal fédéral par la voie du recours en matière civile.*

*Le recours doit être adressé au Tribunal fédéral, 1000 Lausanne 14.*

*Valeur litigieuse des conclusions pécuniaires au sens de la LTF supérieure ou égale à 30'000 fr.*

Exhibit 4 Page 761





RE P U B L I C    A N D    CANTON OF GENEVA

[coat of arm]

J U D I C I A L   POWER

**C/1179/2023**

**ACJC/332/2024**

# JUDGEMENT

## OF THE COURT OF JUSTICE

Civil Chamber

### FROM WEDNESDAY 6 MARCH 2024

Between

**1)**   **Mr. André BOISSIER,** residing at 270 18th Street, Santa Moncia, 90402 California, United States of America,

2)   **Ms. Natasha BOISSIER,** domiciled at 24 Northampton Avenue, Berkeley, 94707 California, United States of America,

**3) Mr. Sergei BOISSIER,** domiciled at 4382 Hookui Road, Kilauea, 96754 Hawaii, United States of America,

**4)**   **David ROACH,** domiciled at 535 Washington Street, Suite 1000, Buffalo, 14203 New York, United States of America,

All appellants against an order made by the Court of First Instance of this Canton on September 26, 2023, represented by Mr. Serge CALAME, lawyer, MLL Froriep SA, rue du Rhône 65, P.O. Box 3199, 1211 Geneva 3,

And

**1) Ms Valeska SIGREN BINDHOFF,** domiciled at 12.110 calle Fray Luis de Leon, Las Condes, ciudad de Santiago, Chile, respondent, represented by Mr Pierre DUCRET, lawyer, CMS von Erlach Partners SA, esplanade de Pont-Rouge 9, case postale 1875, 1211 Geneve 26,

**2) BANQUE LOMBARD ODIER & CIE SA,** rue de la Corraterie 11, other respondent, represented by Emma LOMBARDINI, lawyer, Poncet Turrettini, rue de Hesse 8, P.O. Box, 1211 Geneva 4.

This judgment is communicated to the parties' by registered letter dated March 13, 2024.



Exhibit 4 Page 762

### IN FACT

A.    By order OTPI/596/2023 of September 26, 2023, notified to the parties on September 28, 2023, the Court of First Instance (hereinafter: the Court) dismissed the application for provisional measures made by André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH (paragraph 1 of the operative part), fixed the legal costs at CHF 1,650, charging them jointly and severally and offsetting them against the advances provided (paragraph 2), and ordered André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH to pay the costs, ordered André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH, jointly and severally, to pay Valeska SIGREN BINDHOFF CHF 1,000. by way of costs (para. 3), ruled that no costs should be awarded in favor of BANQUE LOMBARD ODIER & CIE SA (para. 4) and dismissed the parties' other claims (para. 5).

The Court held that the main purpose of the application was to guarantee the payment of a potential claim in the event that André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH were to win foreign proceedings, so that it was a disguised sequestration. In addition, the aforementioned plaintiffs had not made it likely that they had suffered a loss that was difficult to repair, since financial loss alone was not such a loss.

B.    a. By a document sent on October 9, 2023 to the Registry of the Court of Justice (hereinafter: the Court), André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH appeal against this decision, which they seek to have set aside, together with the legal costs and expenses of the first and second instances.

That being the case, they request that the Court prohibit any act of disposal on bank account no. 112991 00 (IBAN: CH52 0876 0000 0112 9910 0) with BANQUE LOMBARD ODIER & CIE SA in Geneva, located at rue de la Corraterie 11, 1204 Geneva, under threat of the penalty of art. 292 of the Swiss Penal Code, which punishes insubordination to a decision of the authorities, orders the said bank to freeze all assets of any kind whatsoever deposited in the aforementioned bank account and states that the order issued on provisional measures will have effect until recognition in Switzerland of an enforceable decision establishing the ownership of the bank account in question.

b. In its reply, Valeska SIGREN BINDHOFF claims, with costs, that the Court should, as a matter of form, remove from the file exhibits 24 to 29bis produced by André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH, declare inadmissible allegations 14 and 15 and 17 to 23 of the appeal, declare inadmissible the appeal brought by its opposing parties and, as a matter of substance, principally, confirm the order made. In the alternative, it claims that the Court should order André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH, jointly and severally, to provide security in the amount of

Exhibit 4 Page 763

CHF 1,028,500 within ten days of notification of the Court's judgment.

It produced documents sent to the Tribunal on September 26, 2023, namely a joint declaration by Mr. Rodrigo Avila Oliver and Mr. Juan Pablo Vergara Sotomayor dated September 25, 2023 with its annexes (exhibit 53), a criminal complaint dated September 22, 2023 (exhibit 54), a letter from Mr. Pierre Ducret to the Court dated September 26, 2023 (exhibit 55) and a list of additional documents dated September 26, 2023 (exhibit 56). It also produced new documents, namely a letter from Mr. Pierre DUCRET to Mr. Serge CALAME dated October 6, 2023 (exhibit 57) and a statement of assets in the joint account dated September 30, 2023 (exhibit 58).

c.   Asked to comment, BANQUE LOMBARD ODIER & CIE SA referred the appeal against the contested order to the courts.

d.   André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH replied, which led to a rejoinder from Valeska SIGREN BINDHOFF, They persisted in their respective conclusions.

e. The parties were informed by letter from the Court Registry on January 4, 2024 that the case was being held over for trial.

**C**. The following relevant facts emerge from the proceedings:

a. Jean-Jacques Gustave Paul BOISSIER (hereafter: Jean-Jacques BOISSIER), a Swiss national, died on November 8, 2021 in Chile.

b. On his death, he left three children from a first marriage, namely André BOISSIER, Natasha BOISSIER and Sergei BOISSIER, as well as his wife, Valeska SIGREN BINDHOFF.

Valeska SIGREN BINDHOFF is the mother of two children, Maria Isabel ECHENIQUE SIGREN and Jorge Ignacio ECHENIQUE SIGREN, from a previous marriage.

c.  The estate of the late Jean-Jacques BOISSIER was opened in Chile and his heirs are his three children and his wife.

d.  The late Jean-Jacques BOISSIER left testamentary dispositions in the United States and Chile.

d.a  According to article 3 of the Chilean will of December 24, 2010, the *"quarter of free disposal"* and the *"quarter of improvements"* of the estate devolve to Valeska SIGREN BINDHOFF.

Exhibit 4 Page 764

Article 4 appoints Valeska SIGREN BINDHOFF as the executor.

d.b  In accordance with the preamble to the American will of June 17 2019, the late Jean-Jacques BOISSIER revoked all previous wills and testamentary dispositions, except those relating to the transfer of property situated outside the United States and executed in accordance with Chilean or Swiss law.

According to Article 7 of the said will, *"if Valeska SIGREN BINDHOFF survived him and was his lawful spouse at the time of his death, he would give and bequeath all the remainder, residue and remainder of his property and estate, movable and immovable, of whatever nature or location, which he owned or was entitled to at the time of his death (his "residuary estate") to his* **QDOT** *Trustees, hereinafter referred to as EN FIDUCIE (known as. VALESKA BOISSIER TRUST), to be held and administered for the purposes described in the remainder of this article. VALESKA BOISSIER TRUST would be maintained and administered by the laws of a state of the United States or by the District of Columbia".*

Under the terms of article 12 of the American will, the late Jean-Jacques BOISSIER appointed two of his children, André BOISSIER and Natasha BOISSIER, and his lawyer, David ROACH, as executors of his will. He also appointed the latter and HSBC BANK USA, based in Buffalo, New York, as *QDOT Trustees* of the VALESKA BOISSIER TRUST.

e. During his lifetime, the late Jean-Jacques BOISSIER and his wife held a joint account no. 112991 00 (IBAN: CH52 0876 0000 0112 9910 0) opened with BANQUE LOMBARD ODIER & CIE SA in 2006 (hereinafter also: the joint account).

This account was funded in particular by distributions from two trusts, VALBOIS TRUST and DUBOIS TRUST, of which Valeska SIGREN BINDHOFF and Valeska SIGREN BINDHOFF has been the sole beneficiary since the death of her husband on November 8, 2021.

On January 3ʳᵈ, April 1ˢᵗ and July 4, 2022, the trustees of VALBOIS TRUST and DUBOIS TRUST made six payments into the joint account totaling USD 529,583.90.

The assets deposited in the joint account amounted to USD 17,348,161 at December 31, 2022 and USD 21,748,688 at 30 September 2023.

f. Under the terms of the relevant account agreement, *"each holder of the joint account shall be entitled to carry out all transactions relating thereto, acting individually and without the agreement or participation of the other account holder(s), and in particular to carry out all acts of management, administration and*

Exhibit 4 Page 765

*disposal* [...]" (art. 2 of the contract).

Article 8 states that *"this contract shall not be terminated by the death of one or more of the policyholders [...]"*.

Article 10 states that *"in the event of the death of one of the holders, the heirs of that holder shall become the legal successors of the deceased holder"*.

g. Since the death of the late Jean-Jacques BOISSIER, his four heirs and the children of Valeska SIGREN BINDHOFF have been in dispute over a number of points.

g.a Before the Chilean authorities, André BOISSIER, Natasha BOISSIER and Sergei BOISSIER unsuccessfully contested Valeska SIGREN BINDHOFF's status as executrix, and then tried to obtain an accounting. They also initiated proceedings to have Valeska SIGREN BINDHOFF declared unworthy, on the grounds that she had concealed the existence of the American will from the Chilean authorities. Valeska SIGREN BINDHOFF's daughter, Maria Isabel ECHENIQUE SIGREN, has filed a criminal complaint against her brother for disloyal management and misappropriation of funds to the detriment of their mother, as well as proceedings for her mother to be declared incapable of discernment, deprived of her rights to administer her property and for a curator to be appointed for this purpose. These last two procedures are still underway. In connection with the above-mentioned criminal complaint, Valeska SIGREN BINDHOFF was interviewed by a police officer on May 9, 2023.

g.b In the United States, André BOISSIER, Natasha BOISSIER and Sergei BOISSIER brought unsuccessful legal proceedings to have Valeska SIGREN BINDHOFF placed under curatorship.

h. By letter dated February 17, 2022, David ROACH contacted BANQUE LOMBARD ODIER & CIE SA, requesting information and detailed statements of the accounts opened in its books in the name of the late Jean-Jacques BOISSIER, as well as the blocking of these accounts.

i. By e-mail dated May 3, 2022, BANQUE LOMBARD ODIER & CIE SA agreed to forward the joint account statements to the children of the deceased.

j. By letter dated November 14, 2022, Valeska SIGREN BINDHOFF requested BANQUE LOMBARD ODIER & CIE SA to transfer to her half of the assets deposited in the joint account.

k. By letter dated November 18, 2022, BANQUE LOMBARD ODIER & CIE SA informed the heirs that it would require a joint transfer instruction in order to be able to divide the assets in the joint account, liquidate the estate and transfer the assets deposited.

Exhibit 4 Page 766

It would not carry out an instruction to this effect without the agreement of the four heirs, particularly as there was a dispute between them.

1. By letter dated December 2, 2022, Valeska SIGREN BINDHOFF gave formal notice to BANQUE LOMBARD ODIER & CIE SA to transfer half of the assets deposited in the joint account to her personal account no. 112990 00 opened with the same bank.

m. On 6 December 2022, Valeska SIGREN BINDHOFF filed a claim for payment against BANQUE LOMBARD ODIER & CIE SA (procedure n° C/24426/2022).

D.  **a.a**  By deed lodged at the Court Registry on January 25, 2023, André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH brought an application for provisional measures against Valeska SIGREN BINDHOFF and BANQUE LOMBARD ODIER & CIE SA, seeking, subject to costs and the threat of the penalty provided for in Article 292 of the Swiss Criminal Code, that the Court prohibit any disposal of the bank account no. CIE SA, requesting, subject to costs and the threat of the penalty provided for in article 292 of the Swiss Criminal Code, that the Court prohibit any disposal of bank account no. 112991 00 held with BANQUE LOMBARD ODIER & CIE SA, order the latter to freeze all assets of any kind whatsoever deposited in the said account and, principally, declare that the order made on provisional measures shall have effect until recognition in Switzerland of an enforceable decision establishing the ownership of the disputed account, subsidiarily, until express agreement on their part or right judged in a material action.

**a.b**  In support of their claim, they argued in particular that the composition of the succession's assets had not yet been defined with certainty, as the deceased had disposed of his assets in Chile and abroad under provisions and wills stipulating different solutions. They had contested the validity of the Chilean will in proceedings initiated both in Chile and in the United States, and a hearing was shortly to be convened in Chile to draw up an inventory of the deceased's assets, so that at the end of these proceedings it would be decided whether or not the account opened with BANQUE LOMBARD ODIER & CIE SA formed part of the estate.

In the meantime, the bank had undertaken not to carry out any instructions that did not come from all the heirs. However, on December 2, 2022, Valeska SIGREN BINDHOFF put BANQUE LOMBARD ODIER & CIE SA in default.

In the circumstances, and given that Valeska SIGREN BINDHOFF had been incapable of discernment for some time, it was justified to freeze the joint account as a matter of urgency pending the outcome of the proceedings. In these circumstances, and given that Valeska SIGREN BINDHOFF had been incapable of discernment for some time, it was justified to freeze the joint account as a matter of urgency pending the outcome of the proceedings pending in Chile and the United States, which would make it possible to clarify the various aspects of the estate and in particular the status of the account. In the event that the account fell into the estate of the deceased.

Exhibit 4 Page 767

The execution of Valeska SIGREN BINDHOFF's instructions would involve an undeniable infringement of the inheritance rights of the heirs with right of succession. It would be virtually impossible to recover assets wrongly withdrawn, given Valeska SIGREN BINDHOFF's incapacity to discern, her domicile in Chile and the influences she may be subject to from her entourage.

**b.** In its determinations of March 20, 2023, BANQUE LOMBARD ODIER & CIE SA referred the matter to the court and requested that no costs or expenses be awarded against it. It also pointed out that it was not in the habit of not complying with court rulings concerning it, that a standing order for USD 7,000 in favor of Valeska SIGREN BINDHOFF was debited from the disputed account, of which André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH were aware, that the bank also paid fees relating to the graves of the family of the late Jean-Jacques BOISSIER in the amount of CHF 950 per annum and that it should also be able to debit its costs, in particular account management costs.

**c. a** In her reply of August 10, 2023, Valeska SIGREN BINDHOFF requested, subject to costs, that the application be dismissed and, in the alternative, that André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH be ordered to provide security of CHF 825,500 within ten days, failing which their application for provisional measures would be dismissed.

c.b In substance, she contested the allegations made by André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH regarding her alleged incapacity for discernment and argued that, as the holder of the joint account, she was entitled to carry out any transactions relating thereto, acting individually, even without the agreement or participation of the other holder, in accordance with the contract of September 18, 2006. Together with her late husband, she was the beneficial owner of half of the assets paid into the joint account, which came from trusts of which they were both beneficiaries. On her husband's death, she became the sole beneficiary of the trusts, which continued to pay her income from the joint account for her benefit alone. However, she was unable to obtain from BANQUE LOMBARD ODIER & CIE SA the return of the said amounts to her personal account. She was therefore the beneficiary of more than half of the assets in the account, which she was free to dispose of and over which André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH had no claim.

Under the terms of the Chilean, as drawn up by the late Jean-Jacques BOISSIER, Valeska SIGREN BINDHOFF was made heir to 70% of the estate. The subsequent American will, did not call these provisions into question. In these c i r c u m s t a n c e s ,  she sent BANQUE LOMBARD ODIER & CIE SA a formal notice on December 2, 2022 to transfer half the assets in the joint account to her personal account, and the bank refused to execute this order. She then decided to take an action against this.

Exhibit 4 Page 768

In her view, the measure requested by André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH constituted a disguised sequestration insofar as it related to claims against BANQUE LOMBARD ODIER & CIE SA, which were part of the estate. Moreover, the conditions for provisional measures had not been met. André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH did not make any substantive claim or any infringement of such a claim plausible. They failed to render plausible his alleged insolvency or the difficulties associated with his residence abroad in recovering any amounts owed to them.

In the event that the request is granted, André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH should be required to pay security of CHF 825,500 corresponding to the loss of interest during the proceedings on the merits as well as the related recovery costs, estimated at CHF 50,000

d. The Court heard the paties at the hearing on September 18, 2023, at which André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH produced additional documents, in particular statements made by various people to the Chilean police (exhibits 24 to 29bis).

At the end of the hearing, the parties pleaded their respective cases and the Tribunal retained the case for trial.

e. On September 22, 2023, Jorge Ignacio ECHENIQUE SIGREN filed a criminal complaint in Chile against his sister and the children of the late Jean-Jacques BOISSIER for possession and use, in civil proceedings, of statements made to a police officer that were not part of any criminal file.

f. By letter dated September 26, 2023, Valeska SIGREN BINDHOFF asked the Court to remove exhibits 24 to 29bis from the file, as they either constituted forgeries or had been obtained unlawfully. She produced a bundle of additional documents comprising a joint declaration by Rodrigo AVILA OLIVER and Juan Pablo VERGARA SOTOMAYOR and its annexes (exhibit 53) and a criminal complaint filed on September 22, 2023 by Jorge Ignacio ECHENIQUE SIGREN against Isabel ECHENIQUE SIGREN, Natasha BOISSIER, André BOISSIER and Sergei BOISSIER (exhibit 54).

Exhibit 4 Page 769

## IN LAW

**1.**    **1.1** Appeals are admissible against first instance decisions on provisional measures (art. 308 para. 1 let. b CPC). In property cases, an appeal is admissible if the amount in dispute at the last stage of the proceedings is at least CHF 10,000 (art. 308 para. 2 CPC).

The contested decision is a decision to reject provisional measures. In view of the assets in dispute, the amount in dispute of CHF 10,000 has largely been reached. The appeal is open.

**1.2**  An appeal is admissible if it is lodged within the prescribed time limit of 10 days and in the prescribed form (art. 142 para. 1, 248 let. d, 311 para. 1 and 314 para. 1 of the Code of Civil Procedure) by persons with an interest worthy of protection (art. 59 para. 1 and 2 let. a of the Code of Civil Procedure, CPC). The same applies to the response, reply and rejoinder (art. 314 para. 1 and 316 para. 2 CPC).

Valeska SIGREN BINDHOFF will hereinafter be referred to as respondent no. 1 and BANQUE LOMBARD ODIER & CIE SA as respondent no. 2.

**1.3**  Appeals may be lodged on grounds of breach of law (art. 310 let. a CPC) and incorrect findings of fact (art. 310 let. b CPC). The appeal judge has full power to examine the case in fact and in law. As provisional measures are subject to the summary procedure (art. 248 let. d CPC), the Court may nevertheless confine itself to the 'plausibility' of the alleged facts and to a summary examination of the law (ATF 127 III 474 consid. 2b/bb, JdT 2002 1 352; decision of the Federal Court 5A_12/2013 of 8 March 2013, para. 2.2).

The maxims of debate (art. 55 para. 1 CPC and 255 CPC *a contrario)* and of disposition (art. 58 para. l CPC) are applicable.

**1.4** The above statement of facts has been supplemented to the extent necessary, so that there is no need to consider further the appellants' complaints that the Tribunal made an incorrect finding of fact.

**1.5.1** Because of the parties' domicile, the case is international in nature (ATF 136 III 142, para. 3.2; 132 III 609, para. 4).

The Swiss court hearing the case examines its jurisdiction and the question of the law applicable to the dispute ex officio, on the basis of Swiss private international law as *lex fori* (BGE 136 III 142, para. 3.2; 135 III 259, para. 2.1; 133 III 37, para. 2).

In the absence of an international agreement, reference should be made to the Federal Act on Private International Law (LDIP).

According to art. 10 letter b of the LDIP, the courts of the place where the measure is to be taken have jurisdiction to order provisional measures, provided that the measure is urgent and necessary (ATF 134 III 326; ACJC/1110/2012 du

Exhibit 4 Page 770

8 August 2012 para. 4.1; BUCHER**,** Romand commentary LDIP/CL, 2011, n. 18 *ad.* art. 10 LDIP).

The provisions of the LDIP do not specify under which law provisional measures must be examined (BUCHER, *op. cit.,* n. 7 ff *ad* art. 10 LDIP). It is not arbitrary to apply Swiss law when the case is urgent, particularly in the case of sequestration (Federal Court rulings 5A 60/2013 of May 27, 2013, para. 3.2.1.2; 5A 259/2010 of April 26, 2012, para. 7.3.2.2; 5P.355/2006 of November 8, 2006, para. 4.2).

**1.5.2**  In the present case, the measures requested involve freezing the assets held by respondent no. 1 with a Geneva bank, so that the place of enforcement is Geneva. These measures appear *prima facie to* be urgent and necessary. If the appellants' claim were upheld on the merits, they would no longer be able to obtain the funds.

Consequently, the Court of First Instance was right to accept that it had jurisdiction *ratiönae loci* and *rationae materiae* (art. 86 para. 1 and para. 2 letter a and c LOJ). The lower court was also right to apply Swiss law with regard to the conditions for granting provisional measures.

**2.**  Respondent no. 1 produced new exhibits and alleged new facts. It states that these are the same exhibits and allegations that it made in its letter of September 26, 2023 to the Tribunal in response to the numerous additional exhibits produced by the appellants at t h e  hearing on September 18, 2023.

The appellants also alleged new facts. Respondent no. 1 requests that allegations no. 14, 15, 17 to 23 of the appeal be declared inadmissible.

**2.1** According to art. 317 para. 1 of the Swiss Code of Civil Procedure (CPC), new facts and evidence are only taken into consideration on appeal if they are raised or produced without delay (letter a) and if they could not be raised or produced before the first instance even though the party relying on them had exercised the required diligence (letter b).

**2.1.1**  Pseudo nova are facts and evidence that had already arisen when the main trial proceedings were closed. Their admissibility is largely limited on appeal, since they are inadmissible if, with due diligence, they could already have been relied upon in the proceedings at first instance. It is up to the litigant to set out in detail the reasons why he or she was unable to present them at first instance (BGE 143 III 42, para. 4.1; Federal Court Judgment 5A-1006/2017 of February 5, 2018, para. 3.3).

*CI* I179/2023

Exhibit 4 Page 771

New evidence is not admissible on appeal simply because it was submitted after the contested decision was handed down. The question that must be answered in order to determine whether the condition of art. 317 para. 1 CPC is met is whether the evidence could not have been obtained before the close of the main trial proceedings (Federal Court judgment 5A_266/2015 of June 24, 2015 paras. 3.2.2 and 3.2.3).

**2.1.2**  Summary proceedings are initiated by an application (art. 252 para. 1 CPC). If the application does not appear to be manifestly inadmissible or unfounded, the court gives the opposing party the opportunity to state its position orally or in writing (art. 253 CPC).

The reply must be sent to the claimant. The latter has the opportunity to take a position on t h e  defendant's arguments by virtue of his right of reply (ATF 144 III 117 consid. 1; **Bons**, Commentaire romand, CPC, 2nd ed., 2019, n. 9 *on* art. 253 CPC).

In summary proceedings, however, none of the parties should expect the court to order a second exchange of written submissions or oral hearings after an initial hearing. The parties do not have the right to express themselves twice on the merits of the case. In principle, the case file is closed after only one position has been taken (BGE 144 III 117, para. 2.2).

It follows that the applicant must submit all his evidence with his application (BOHNET, *op. cit.,* n. 9 *ad* art. 252 CPC). It is only if a hearing is held after a first exchange of written submissions or if a second exchange of written submissions is ordered that the Federal Court and certain authors accept that new facts and new offers of proof may still be introduced at the start of the main hearing, by analogous application of art. 229 CPC (BGE 144 III 117, para. 2.2; BOHNET, *ibidem).*

However, this does not alter the fact that the parties have the right to comment, within an appropriate timeframe, on any act of the court or the opposing party, regardless of whether or not it contains new and important information (Federal Court judgment 5A_82/2015 of June 16, 2015, para. 4.1). However, this unconditional right of reply allows the parties to clarify or even supplement their arguments, but not to present new allegations or offers of proof. In this case, these nova are removed from the file, and the reply is only taken into consideration for the rest (Federal Court judgment 4A 557/2017 of February 21, 2018, paras. 2.1 to 2.3).

For the right of reply to be guaranteed, the court must allow the party concerned sufficient time between the submission of the position paper or new documents and the delivery of its decision to file observations if it considers this necessary to defend its interests.

Exhibit 4 Page 772

According to the case law, the waiting period on which the court must rely cannot, as a general rule, be less than ten days or more than the waiting period for lodging an appeal. This waiting period includes the time required for the litigant to send any reply to the court (Federal Court judgments 5D_112/2013 of August 15, 2013, para. 2.2.3; 5A_750/2016 of November 15, 2016, para. 2.2.4). recital 2.1).

**2.2.1** In the present case, the alleged new facts and exhibits no. 53 to 56 produced by respondent no. 1 as part of the response to the appeal correspond to the new facts and exhibits transmitted to the Tribunal on September 26, 2023, i.e. after the case had been held for trial by the Tribunal. These new allegations and exhibits relate to the additional exhibits produced by the appellants at the hearing on September 18, 2023 and could not have been made or produced before that date. There are real novas.

These new facts and means of proof crossed paths with the order under appeal, dated September 23, 2023, even though the time limit for the unconditional right of reply of at least ten days had not yet expired.

New exhibits no. 53 to 56 and the new facts relating thereto are therefore admissible.

With regard to exhibits no. 57 and 58, they were submitted after the case was heard by the Court, could not have been produced before it and were added to the proceedings at the first useful opportunity. They are therefore admissible, as are the facts relating to them.

**2.2.2** The appellants' new allegations, allegations 14 and 15 of the appeal, summarize allegations no. 7 to 13 of the request for provisional measures. They are therefore not new facts. These allegations are therefore admissible, as are allegations no. 1 to 13 and 16, whose admissibility is not contested.

As for allegations no. 17 to 23 in the appeal, they refer to exhibits no. 24 to 29bis that the appellants produced at first instance at the hearing on September 18, 2023. However, they were not alleged at first instance. Consequently, these new facts are *false novas*. They could and should have been the subject of new allegations introduced before the first judge. Alleged for the first time on appeal, they are out of time and therefore inadmissible.

3.   Respondent no. 1 requests that exhibits no. 24 to 29bis produced by the appellants be removed from the file on the grounds that they were obtained unlawfully.

Exhibit 4 Page 773

**3.1** According to art. 152 para. 2 of the Swiss Code of Civil Procedure, the court will only consider evidence obtained unlawfully if there is an overriding interest in ascertaining the truth.

This rule applies both to evidence obtained in violation of a substantive law rule, which protects the legal asset affected by the infringement in question, and to evidence obtained in violation of a procedural rule (BGE 140 III 6, para. 3.1).

The case law specifies that the use of so-called illicit evidence is not excluded in all circumstances, but that the interests at stake must be weighed. The judge must weigh the interest in protecting the property damaged by the unlawful obtaining of evidence against the interest in ascertaining the truth (ATF 140 III 6 rec. 3.1).

By way of example, and based on the case law of the Federal Supreme Court and the European Court of Human Rights, the legislator cites the document obtained under threat or by violence, for which personal integrity in principle takes precedence over the interest in establishing the truth. It also refers to documents that have *"merely" been* stolen, but which may be used if the establishment of the truth so requires (Message of the Federal Council of June 28, 2006 on the Swiss Code of Civil Procedure, *in* FF 2006
p. 6841 ff, spec. 6922 S.; CHABLOZ/COPT, Petit Commentaire du Code de procédure civile, 2021, n. 15 *ad* art. 152 CPC).

It is thus generally accepted that physical, mental or spiritual integrity carries more weight than material values such as property or possession (CHABLOZ/COPT, *op. cit.,* n. 15 *ad* art. 152 CPC).

The legal asset protected by criminal law offences relating to documents of title is the trust placed in a document of title as evidence in legal relationships, known as *publica fides*. Article 251 of the Criminal Code also protects the interests of private individuals who may be harmed by the use of a misleading document (KIN**ZER**, Romand commentary, Code pénal II, n. 3 *ad* art. 251 CP).

The party claiming that it was unlawful to obtain the evidence bears the burden of proof. In other words, it is not up to the other party to prove that the evidence was obtained lawfully (Federal Court ruling 5A-643/2020 of September 11, 2020, para. 4.4).

**3.2** In the present case, it has not been made likely that the disputed documents were obtained by the appellants in an unlawful manner. In particular, it is not because the son of respondent no. 1 filed a criminal complaint in Chile for possession and use in civil proceedings of statements made before a police officer which do not appear in any criminal file in that State, or that the lawyers of respondent no. 1 drew up a joint declaration to that effect.

Exhibit 4 Page 774

Even supposing that these documents had been obtained illegally or that, as respondent no. 1 maintains, they constituted forgeries of documents, the interest in ascertaining the truth would appear to be overriding in the present case. Indeed, the interest in being able to determine respondent no. 1's capacity to discern - the main subject of the disputed documents - takes precedence over the means by which the said documents were obtained, since they were not in any event obtained by an attack on her physical, mental or spiritual integrity. Similarly, the interest in ascertaining the truth takes precedence over the interest of respondent N° 1, who could potentially be harmed by the use of these documents.

There is therefore no reason to remove the disputed documents from the file.

4.    The appellants criticize the Court for holding that their request for provisional measures was akin to a *"disguised sequestration"*. Their claim was material since, according to them, article 7 of the American will provided for the creation of the VALESKA BOISSIER TRUST from the *"residuary estate"* of the late Jean-Jacques BOISSIER and that the joint account was an integral part of it.

They also argue that since the measures requested would have little impact on the rights and situation of the respondent n° 1, the assessment of the existence of the substantive right invoked and the conditions of the provisional measures should be more flexible.

The appellants also criticized the Court for holding that they had not made it probable that the damage they claimed was difficult to repair. The fact that they would have to sue for damages, added to the fact that respondent no. l was domiciled abroad, of advanced age and susceptible to manipulation, would cause them damage that would be difficult to repair.

**4.1.1**  Under art. 261 para. 1 CPC, the court must order the necessary provisional measures if the claimant demonstrates that a claim to which he is entitled has been or is likely to be infringed (let. a) and that this infringement is likely to cause him damage that is difficult to repair (letter b). These are cumulative conditions (BOHNET, Commentaire romand CPC, 2nd ed. 2019, n. 3 *ad* art. 261 CPC).

The granting of provisional measures presupposes the likelihood of the right invoked and of the chances of success of the trial on the merits, as well as the likelihood, on the basis of objective factors, that an imminent danger threatens the applicant's right, and finally the likelihood of damage that is difficult to repair, which implies urgency.

Exhibit 4 Page 775

(Message of the Federal Council of June 28, 2006 on the Swiss Code of Civil Procedure, *in* FF 2006 p. 6841 ff, spec. 6961; BOHNET, *op. cit.* no. 3 ff *ad* art. 261 CPC).

In particular, the judge must assess the chances of success of the application on the merits, and grant or refuse the measure depending on whether the existence of the alleged right appears more likely than its non-existence. If the court is able to rule on the basis of mere plausibility, it does not have to be convinced of the accuracy of the applicant's allegations, but it is sufficient if, on the basis of objective elements, it acquires the impression that the relevant facts occurred, without having to exclude the possibility that they might have occurred otherwise; as for questions of law, it may be satisfied with a summary examination (Federal Court rulings 4A 508/2012 of January 9, 2013, para. 4.2 and 5P.422/2005 of June 1, 2006, para. 3).

The applicant must make it likely that, because of the length of time it would take to reach a final decision, he or she would be exposed to damage that could not be entirely eliminated even if the judgment were to be in his or her favor. In other words, it is a matter of avoiding being presented with a fait accompli whose effects cannot be completely eliminated by the judgment (Federal Court judgments 4A_50/2019 of May 28, 2019, para. 6.6.2; 4A 611/2011 of January 3, 2012, para. 4.1). Material, pecuniary or intangible damage that is impossible or difficult to measure or compensate for in full at a later date is difficult to repair (BGE 138 III 378, para. 6.3).

The court must weigh the interests of the two types of damage that are difficult to repair, i.e. the damage suffered by the plaintiff if the measure is not immediately enforced and the damage suffered by the defendant if the measure is enforced *(ibidem)*.

The mere enforcement of money claims does not in itself result in damage that is difficult to repair so far as the person concerned can obtain restitution if he or she is ultimately successful (BGE 138 III 333, para. 1.3.1; Federal Court rulings 5A 143/2012 of May 9, 2012, para. 2.2.1; 5D 52/2010 of May 10, 2010, para. 1.1.1 *in* SJ 2011 I, p. 134).

**4.1.2** Under art. 262 of the Swiss Code of Civil Procedure, the court may order any provisional measure designed to prevent or halt the damage, including the following measures: a prohibition (letter a), an order to cease an unlawful state of affairs (letter b), an order given to an authority that keeps a register or to a third party (letter c), the provision of a benefit in kind (letter d) or the payment of a monetary benefit, where the law so provides (letter e).

Exhibit 4 Page 776

Under art. 263 CPC, if the action on the merits is not yet pending, the court sets a time limit for the claimant to file the application, failing which the measures ordered lapse.

Article 269 of the Swiss Code of Civil Procedure reserves various provisions of other laws concerning provisional measures. The main exception is the Federal Law on Debt Collection and Bankruptcy (RS 281.1; hereinafter: LP).

Provisional security for money debts is governed by art. 271 et seq. LP on sequestration, and provisional measures may not be taken to protect money debts on a provisional basis *("disguised sequestration",* ATF 86 II 291 rec. 2; 108 II 180 rec. 2; Federal Court rulings 5D_54/2008, art. 271 et seq. LP on sequestration). June 23, 2008 para. 2.3 and 5A_853/2013 of May 23, 2014 paras. 2.2.3 and 3.3). The scope of provisional protective measures is therefore in principle limited to the protection of real or personal rights that are not pecuniary in nature ( Federal Court decisions 5A 853/2013 of May 23, 2014, paras. 2.2.3 and 3.3 and 5A_852/2010 of March 28, 2011, para. 3.1; **HOHL,** civil procedure, tome II, 2010, nos. 1747 et seq.)

The Court had occasion to rule that a prohibition on a third party, namely a bank, from following any instruction to transfer or dispose of any account held by a party whose inheritance rights and function as executor were disputed, was not intended to obtain a guarantee for the recovery of a possible claim but was aimed to immobilize assets, under the control of the said party (in his capacity as executor), but likely to form part of the estate which was the subject of the disputed executor's mission abroad, so that such a measure did not constitute a "disguised sequestration" (ACJC v. France). Such a measure did not therefore constitute a *"disguised sequestration"* (ACJC/903/2021 of July 8, 2021, recital 3.1.2; ACJC/521/2019 of April 4, 2019, recital 7.2).

**4.2** In the present case, it is necessary to examine whether the conditions for ordering provisional measures, aimed at blocking a bank account and prohibiting the respondents from transferring assets or having them transferred, have been met.

    **4.2.1**    According to the appellants, the request for provisional measures would not be a *"disguised sequestration",* since the joint account constituted a movable object that should be protected in order to guarantee its integration into the trust once it had been set up. *Prima facie,* the contested wills do not allow this to be the case.

It is true that the American will revokes all previous testamentary provisions, including the Chilean will. Having said that, the American will also reserves in the preamble *"the wills and testamentary dispositions relating to the transfer of property situated outside the United States and executed in accordance with Chilean or Swiss law ".*

Exhibit 4 Page 777

It should therefore be understood that the American will does not apply to assets located in Switzerland, of which the joint account forms part. The fact that the *deceased* specified in article 7 of the American will that the VALESKA BOISSIER TRUST would collect all the remaining assets *"regardless of their nature or location"* can and must be interpreted in the light of the aforementioned preamble, i.e. that it must collect only the remaining assets located in the United States. As the joint account is located in Switzerland, it does not appear to be one of the assets that will have to be integrated into the aforementioned trust. It is therefore a bank account whose devolution will probably be settled in the light of the Chilean will.

The appellants therefore have only a pecuniary claim against party no. 1 for the division of the joint account.

The Court was therefore correct in holding that the appellants' motion constituted a *"disguised sequestration"* and that the appellants' motion should therefore be dismissed.

This is sufficient to seal the fate of the appeal and confirm the order made.

**4.2.2** Superfluously, it should be added, as held by the first judge, that neither a prejudice to the appellants' claim nor a prejudice that is difficult to repair have been made likely by the appellants.

Indeed, Respondent no. 1's incapacity for discernment is not made likely, as neither of the two proceedings brought by the appellants to appoint a curator in her favor were successful and no other document in the file makes it possible to establish such incapacity. The written statements to the Chilean police produced by the appellants on September 18, 2023 constitute, in some cases, mere allegations by the parties *(see* exhibits 24 to 25bis) and, in other cases, do not emanate from medical professionals *(see* exhibits 26 to 29bis). They are therefore not likely to attest to the respondent's incapacity for discernment. On the other hand, the file shows that the respondent no. 1 was able to testify on May 9, 2023 before the Chilean police in the criminal proceedings initiated by her daughter against her son. Had she not been capable of discernment, she would probably not have been able to testify. It cannot therefore be accepted, without further evidence, that the son of respondent no. 1 would exploit his mother's weakness for his own interests, to the detriment of the interests of his mother and sister.

Furthermore, the fact that respondent no. 1 is domiciled in Chile does not, on its own, justify a finding that any proceedings brought against it, whether for partition of the estate or for payment of damages, would be so complicated and/or particularly lengthy as to create a prejudice that would be difficult to compensate for the appellants. In all proceedings to date, by the appellants against respondent no. 1, whether in the United States, Chile or Switzerland, respondent no. 1 has taken an active part or has been represented.

Exhibit 4 Page 778

Nor is it made likely either that respondent no. 1 would attempt to misappropriate assets belonging to the estate or that she would be insolvent. In fact, asking respondent no. 2 to pay into her personal account half of the joint account, even though respondent no. 1 alleges that she is entitled, under the Chilean will, to 70% of the estate (20% in the case of her reserved portion + 25% *"quarter of free disposal"* + 25% *"quarter of improvements")* in addition to the half of the account to which she is entitled, i.e. at least 85% of the total assets deposited in this account, suggests that she does not intend to withdraw assets from the estate but only to recover what rightfully belongs to her, i.e. her share as joint holder of the joint account.

Finally, as the Court found, the insolvency of respondent no. 1 was not made likely either. If she were ordered to pay an amount to the appellants, it is not likely that she would not be able to pay it.

In the light of the foregoing, the Court of First Instance was right to hold that the conditions for ordering provisional measures to freeze the joint account had not been met and that the appellants' claims should be dismissed.

The contested order must therefore be confirmed for this reason too.

5.    **5.1** The legal costs of the appeal will be set at CHF 1,440 (art. 26 and 37 RTFMC), to be borne by the appellants, who are unsuccessful in their appeal (art. 106 para. 1 CPC), and offset against the advance paid, which will be retained by the State of Geneva (art. 111 al 1 CPC).

**5.2** The appellants will be ordered, jointly and severally, to pay respondent n° 1, CHF 500 by way of appeal costs, including disbursements and excluding VAT, as respondent n° 1 is domiciled abroad (Federal Court judgment 4A 623/2015 of March 3, 2016; arts. 84, 85, 88 and 90 RTFMC; art. 23 para. 1, 25 and 26 LaCC).

No costs will be awarded to respondent no. 2, as it does not claim any.

*******

Exhibit 4 Page 779



**ON THESE GROUNDS,**

**The Civil Division:**

**In the form:**

Declares admissible the appeal lodged on October 9, 2023 by André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH against order OTPI/596/2023 made on September 26, 2023 by the Court of First Instance in case C/1179/2023-16 SP.

**On the merits:**

Confirms the order made.

Dismisses the parties' other claims.

**Appeal costs:**

Sets the legal costs of the appeal at CHF 1,440, charging them to André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH, jointly and severally, and offsetting them against the advance on costs provided, which is retained by the State of Geneva.

Orders André BOISSIER, Natasha BOISSIER, Sergei BOISSIER and David ROACH to pay, jointly and severally, CHF 500 to Valeska SIGREN BINDHOFF by way of appeal costs.

Holds that BANQUE LOMBARD ODIER & CIE SA shall not be awarded any appeal costs.

**Sitting:**

Mr. Laurent RIEBEN, President; Ms. Fabienne GEISINGER-MARIETHOZ, Mr. Ivo BUETTI, Judges; Ms. Mélanie DE RESENDE PEREIRA, Registrar.

For official record

The Registrar:

[Signature]

[Seal: Republic and Canton of Geneva. Court of Just

Exhibit 4 Page 780



*Remedies available:*

*In accordance with Articles 72 et seq. of the Federal Act of June 17, 2005 on the Federal Supreme Court (LTF, RS 173.110), this judgment may be appealed to the Federal Supreme Court by way of civil action within thirty days of being served with a complete copy (Article 100 para. 1 LTF).*

*Appeals should be addressed to the Swiss Federal Supreme Court, 1000 Lausanne 14.*

*Value in dispute of pecuniary claims within the meaning of the LTF greater than or equal to CHF 30,000.*



I, Ohaeri Ifeanyi Kingsley, a translator fluent in the French and English Languages, on behalf of Centaurus do solemnly and sincerely declare that the following is, to the best of my knowledge and belief, a complete and correct translation of the document(s) listed below in a form that best reflects the intention and meaning of the original text.

*Ohaeri kingsley*

_____

Signature of Translator

Date: August 5, 2024.

Description of Documents: This document is the judgement issued from the Court of appeal on Wednesday 6 March 2024 and communicated to the parties' by registered letter dated March 13, 2024.

Exhibit 4 Page 782