# EXHIBIT 18



Subscribe to DeepL Pro to translate larger documents.
Visit www.DeepL.com/pro for more information.

Chapeau

109 II 436

92. Extract from the judgment of 27 September 1983 of the First Civil Court in the case of Discount Bank Overseas Limited v Mowlazadeh (appeal for reformation)

Regeste

Dommage supérieur à l'intérêt moratoire (art. 106 al. 1 CO), dû à la dépréciation de la monnaie pendant la demeure.
1. La répartition du dommage supérieur à l'intérêt moratoire peut être demandée dans un nouveau procès, même si la créance sur laquelle l'intérêt est dû a déjà fait l'objet d'un jugement (consid. 1).
2. L'admission d'un dommage supplémentaire dû à la perte de valeur de la monnaie contractuelle ne peut résulter de la seule possibilité que le créancier aurait eue de transformer cette monnaie en devise forte; on doit examiner s'il existe des preuves ou indices suffisants pour que la réalisation d'une telle opération apparaisse très vraisemblable. La conversion en monnaie ayant cours légal au domicile ou au centre d'affaires du créancier est néanmoins présumée (précision de la jurisprudence, consid. 2).

Faits <small>à partir de page 437</small>

BGE 109 II 436 S. 437

**A.-** On 15 May 1979, Discount Bank Overseas Limited was ordered by the Federal Court to pay Dr Mahmoud Mowlazadeh the following sums:
- Fr. 14,739.45 with accrued interest to 13.2.1976,
- DM 15'317.10 with accrued interest to 13.2.1976,
- US $ 2'358.19 with accrued interest to 13.2.1976,
- US $ 215,000 with interest at 6 5/16% from 12.11.1975 to
13.2.1976 on US $ 260,000, less interest at 5% from 1.7.1975 on
US $ 45,000,
all with interest at 6% from 14 February 1976.
The judgment also empowered the Bank to pay the creditor amounts in foreign currency (DM and US $) converted into Swiss francs at the exchange rate of 13 February 1976. The first three amounts consisted in the balance of a conventional account opened by Dr Mowlazadeh with the Bank; the last in the partial repayment of a trust deposit of $260,000 which had expired on 23 February 1976. The Bank had refused to make the payments, invoking the offsetting of the debt against a further account in Dr. Mowlazadeh's name.

BGE 109 II 436 S. 438

Mowlazadeh, which closed with a liability of over $242,000. The latter had been created by two employees of the Bank, who were subsequently sentenced to prison terms for embezzlement; Dr. Mowlazadeh had realised the shortfall, but had acceded to the promises of compensation made by one of the responsible employees and had concealed the fact from the Bank. The Appeals Tribunal of the Canton of Ticino, finding negligence on the part of the account holder, had reduced Dr. Mowlazadeh's overall claim by USD 60,000. The Federal Supreme Court limited the reduction to $45,000.

**B.-** In accordance with the judgment of the Federal Court, Discount Bank Overseas Limited paid on 6 June 1979 to Dr Mowlazadeh the above amounts, each in their respective currencies. However, whereas their sum was equivalent to Fr. 575'500.51 on 13 February 1976, on the date of payment it represented only Fr. 395'848.24 because of the different exchange rates of the US dollar and the German mark. On 16 July 1980, Dr. Mowlazadeh summoned Discount Bank Overseas Limited before the Court of Appeal of the Canton of Ticino, claiming compensation for the difference in the exchange rate (Fr. 179,852.27) with interest at 6% from 13 February 1976 to 6 June 1979, plus interest at 6% from 16 July 1980. By judgment of 27 January 1983, the cantonal court recognised the damage claimed by the plaintiff in addition to the default interest already received and granted the petition.

**C.-** Having appealed to the Federal Court on 7 March 1983, Discount Bank Overseas Limited concludes that the cantonal judgment should be set aside and all claims should be dismissed; in the alternative, it submits that the petition should be granted limited to CHF 128,791.50 plus interest at 5% from 9 June 1979. Mahmoud Mowlazadeh requests that the appeal be dismissed.

Considérants

Recital in law:

Exhibit 18 Page 861

**1.** The appellant first reiterates the objection of res judicata raised in the cantonal court, arguing that the conversion into Swiss francs of the amounts fixed in foreign currency had already been the subject of the previous judgments. Both the Civil Chamber of Appeal and the Federal Supreme Court had in fact established an obligation

BGE 109 II 436 S. 439

alternative that authorised the Bank to pay both in actual currency and in Swiss francs at the exchange rate of 13 February 1976.

The exception is unfounded. According to federal law, a judgement precludes the institution of a subsequent civil trial if the latter is between the same parties, concerns the same claim and is based on the same set of facts (**BGE 105 II 270** , **BGE 97 II 396** ff. with citations). The present case concerns damages in excess of the amount of default interest that the plaintiff deduces from the late receipt of sums in foreign currency, now depreciated compared to their value in Swiss francs at the time the claim was due. This claim was not the subject of the earlier proceedings, in which the existence and extent of Dr. Mowlazadeh's contractual claim, the loss set off by the Bank and the total amount of default interest were adjudicated. There was no question of any damage greater than the default interest suffered by Dr. Mowlazadeh as a result of the Bank's late payment (Art. 106(1) CO).

The authority given to the bank to indemnify the creditor in foreign currency or in Swiss francs at the rate of maturity arises from Art. 84 para. 2 CO and is unrelated to Art. 106 CO. The authorisation merely incorporates a legal norm. It indicates, without any significance for the extent of the claim, the way in which the debtor could release itself from the obligation; it has no bearing, however, on the existence of damage exceeding the interest on arrears (WEBER in: Berner Kommentar, 3rd Edition, supra note 340 at art. 84 CO; HENGGELER, Die Abwertung des Schweizerfrankens und ihr Einfluss auf die zivilrechtlichen Verhältnisse, in: RDS 56/1937, p. 157a ff., in particular p. 228a; **DTF 57 II 72** consid. 3, **DTF 54 II 266**). The reimbursement of such a loss constitutes a claim independent of the claim referred to in Art. 84 para. 2 CO, a claim that is additional to the original claim (BUCHER, Schweizerisches Obligationenrecht, Allgemeiner Teil, p. 4, in: RDS 56/1933, p. 157a et seq.

269 with references; cf. **ATF 76 II 375** consid. 4, **ATF 60 II 340** consid. 2). Moreover, the choice permitted by Art. 84 para. 2 CO does not have the effect of releasing the defaulting debtor (VON TUHR/PETER, Allgemeiner Teil des schweizerischen Obligationenrechts, vol. I, p. 65 with citations). Reparation of a loss in excess of default interest may therefore be claimed in a new lawsuit, even if the claim on which the default interest accrued has already been the subject of a

BGE 109 II 436 S. 440

previous judgement (see VON BÜREN, Schweizerisches Obligationenrecht, Allgemeiner Teil, p. 368 note 16). In such circumstances the debtor may not raise the plea of res judicata.

**2.** The cantonal court considers that the compensation to which the plaintiff is entitled under Article 106 CO corresponds to the sum indicated in the petition, i.e. the depreciation suffered against the Swiss franc by the foreign currency amounts paid by the bank. It would not be for the creditor to prove that, in the event of correct and timely payment by the debtor, he would have transformed the proceeds into non-depreciated currency. Departing from a recent decision of the Federal Supreme Court (published in Rep. 1978, p. 242 ff., in particular p. 251), the court considers that the latter hypothesis does not exhaust all possibilities of damage attributable to depreciation, since the creditor could also have made use of the depreciated currency to fulfil its obligations in that currency.

The applicant does not dispute the amount of the depreciation calculated by the cantonal courts. In his opinion, however, the creditor did not suffer any damage: first, he did not provide the slightest proof of damage; second, even if he had received the amount in foreign currency when it fell due, the legal regulations in force in Switzerland at the time would have made it extremely disadvantageous to convert the claim into Swiss francs. With regard to the alleged use of foreign currency to settle debts in the same currency, the creditor could not claim anything more than the default interest already collected, since the aforementioned debts would in turn have been redeemed against the Swiss franc. Be that as it may, even if the creditor had succeeded in converting foreign currencies into Swiss francs, these would not have borne any fruit, so that default interest had to be deducted from the damage; in the alternative, therefore, the plaintiff concludes for a reduction of the damage to CHF 128,791.50.

a) Under Art. 106 CO, the debtor in default is liable for the loss resulting from the depreciation of the currency between the date of the notice of default and the date of payment, provided that the damage exceeds the amount of the default interest. That harm does not consist in the loss of the purchase value, but in the deterioration of the currency parity of the contractual currency, so that the delay in payment prevents the aggrieved party from converting the sum due to it in time into the currency not

BGE 109 II 436 S. 441

subject to depreciation. As to the existence and proof of damage, the jurisprudence of the Federal Supreme Court has not always been constant.

In two judgements from 1920 and 1921 (**BGE 46 II 403** and **BGE 47 II 301**), the Federal Supreme Court ruled that a foreign creditor who has been paid in the currency of his or her country cannot rely on the depreciation of that currency unless he or she proves that, had he or she been paid when due, he or she would have immediately converted the entire sum into Swiss francs. Conversely, the Federal Supreme Court has ruled in other judgments (**BGE 47 II 190** and 438, **BGE 48 II 74**, **BGE 60 II 337**) that the risk of a devaluation of the currency of the payment is borne by the debtor in default under Article 103 CO and that the creditor suffers a loss already because he could not exchange the now depreciated sum into hard currency. Such a conception started from the assumption that the debtor in default should not profit from a fortuitous currency depreciation; since the descent

Exhibit 18 Page 862

of the foreign exchange rate with respect to the day on which the claim was due presumes additional damage, it is up to the debtor to prove that the creditor has suffered no damage or has suffered less damage than the loss of value, or would have been damaged irrespective of the delay in payment. Subsequently, the Federal Supreme Court reaffirmed that the value of a currency that is not legal tender at the creditor's place of domicile is to be valued according to the parity of that currency at the place of domicile, it being presumed precisely that the creditor residing abroad would have converted the sum received in foreign currency into the currency of his country (**ATF 76 II 371**). Lastly, in the above-mentioned judgment of 30 September 1976 published in Rep.

1978 p. 242, the Federal Supreme Court re-established a substantially restrictive practice. After noting that the presumption of damage resulting in any event to the creditor from the exchange rate loss appears too absolute, it confirmed that there is indeed a natural presumption that the creditor of foreign currency transforms the sum received into the national currency, respectively of the country of residence, but specified that the mere theoretical possibility for the creditor to transform his claim into a currency that is not devalued is not sufficient to burden the debtor with any loss resulting from the exchange rate variation. Therefore, the creditor domiciled in Lima or Madrid could not benefit from any natural presumption to the effect that, having an account in dollars, he would convert it into Swiss francs.

BGE 109 II 436 S. 442

b) The most recent line of jurisprudence deserves confirmation. The doctrine, moreover, almost unanimously imputes to the creditor the proof that, if the performance in foreign currency had been timely, he would have converted the collection into non-depreciated currency; on the other hand, it may be presumed that the creditor would have converted the sum, when due, into the currency that is legal tender in his country of domicile (VON BÜREN, op.cit., p. 369; BUCHER, op.cit., p. 320, footnote 112; WEBER, op.cit., footnote 362 to Art. 84 CO, p. 369; BUCHER, op.cit., p. 320 note 112; WEBER, op.cit., note 362 to Art. 84 CO; HENGGELER, op.cit., p. 225a, 228a, 230a and 231a; PICOT, Le cours du change et le droit, in: RDS 40/1921, p. 293 ff, in particular pp. 315 to 318; MARCEL GIACOMETTI, Währungsprobleme im Zivilprozessrecht und in der Zwangsvollstreckung, thesis, Zurich 1977, p. 72 ff; for a more extensive presumption of damage see instead VON TUHR, Umrechnung von Markschulden in Frankenwährung, in: SJZ 19/1922-23, p. 17 ff., in particular p. 19; VON TUHR/ESCHER, op.cit., vol. II, p. 145).

In the present case, contrary to the cantonal court's opinion, it cannot be assumed that the plaintiff's claim would have been converted into Swiss francs when due. The plaintiff, an Iranian citizen, has been residing in Italy for some thirty years. The mere fact that he holds credits in Swiss francs and dollars in Switzerland or that he has close relations with Swiss banks is not sufficient to presume the above-mentioned exchange transaction: the decisive factor is the creditor's domicile or place of business (see WEBER, op. cit., footnote 362 to Art. 84 CO). It remains to be examined whether there is any evidence or clues to support the hypothetical conversion of the claim when it falls due.

c) The problem should not be examined too strictly. However, while findings as to the currency habitually used by the creditor in his business or the way in which he habitually proceeds in similar cases may suffice, the fact that he performs "many conversion operations according to the needs of his international trade" or that he "also uses dollars in making his payments to suppliers residing in the dollar area or who in any event are paid in dollars" does not appear to be conclusive. Findings of this kind do not support the possibility of a total conversion of the credit into Swiss francs on its due date. It matters little that, as the court states, if the proof of loss failed the defendant bank would benefit from the default, since Art. 106 CO concerns the loss suffered by the creditor, not

BGE 109 II 436 S. 443

any advantage gained by the debtor. Nor can it be said that from the beginning of the default the aggrieved party is no longer master of events, since it can always declare to the debtor in default what conversion to apply to the sum due (see BUCHER, op. cit. p. 320 note 112).

The cantonal court sees the failure to presume damage as a reversal of the burden of proof. Wrongly. The obligation to prove a loss that exceeds the default interest rests, as such, with the creditor (Art. 106 para. 1 CO in connection with Art. 8 CC). However, if the aggrieved party claims damages in excess of the default interest due to the loss on the exchange of legal tender at the place of its domicile, the court presumes such damages based on common experience and the ordinary course of events. This is merely a factual presumption that facilitates but does not reverse the burden of proof (see HABSCHEID, Droit judiciaire privé suisse, p. 389; GULDENER, Schweizerisches Zivilprozessrecht, 3rd edition, p. 322 and 326; WALDER-BOHNER, Zivilprozessrecht, 3rd edition, p. 338).

Finally, the cantonal courts presume a loss, given the creditor's inability to make payments in the same currency as the sum owed by the delinquent debtor. This does not mean, however, that the creditor (whether domiciled in Switzerland or abroad) suffers a loss equal to the aforementioned exchange rate difference: the fact of using depreciated currency to settle debts in the same currency does not constitute a loss in arrears, but a non-compensable consequence of the monetary depreciation. The assumption of the cantonal courts therefore has no bearing on the hypothetical harm suffered by the creditor.

d) The factual elements which can be deduced from the contested judgment do not make it possible to estimate the portion of dollars and marks which the plaintiff would have converted into Swiss francs when the credit expired. It is true that such an assessment must not be bound by too strict criteria; on the other hand, it must not disregard the monetary restrictions in force in Switzerland on 13 February 1976, which are important appreciation factors for a possible conversion of foreign currency. Given such restrictions, it is up to the creditor to explain how he would, in principle, have carried out the conversion in accordance with the existing rules (**BGE 46 II 408**).

Exhibit 18 Page 863

**3.** The conclusion is that the case must be referred back to the cantonal authority for it to carry out the necessary investigations and issue a new ruling (Art. 64(1) OG).

BGE 109 II 436 S. 444

a) On the basis of the evidence and clues emerging from the case file, the courts will assess the proportion of dollars and marks that the plaintiff would likely have converted when the credit expired, taking into account the monetary restrictions in force on 13 February 1976 (see the Federal Decree of 8 October 1971 on the Protection of Currency and its implementing ordinances, in particular the Ordinance of 20 November 1974 instituting measures against the inflow of foreign capital). In this respect, the courts will exclude any disadvantageous or unreasonable exchange transactions.

They will also rule on the defendant's arguments that only part of the claim could be converted without incurring heavy negative fees.

b) In the alternative, the court will decide on the defendant's argument that the dollar and mark amounts, even if they had been converted into Swiss francs, would not have borne interest due to monetary legislation. If the assumption proves to be well-founded, the damage in connection with the non-conversion of the dollar and mark amounts that would have been converted into Swiss francs must be reduced by the 6% default interest received by the plaintiff in accordance with the Federal Supreme Court's decision of 15 May 1979. The exchange into a non-remunerable currency obviously precludes the payment of benefits such as default interest.

c) The final amount that the court shall, if appropriate, award to the plaintiff as additional damages shall be increased by 6% interest from 16 July 1980, the date of the petition.

Dispositif

For these reasons, the Federal Supreme Court pronounces:
The appeal is allowed in part and the judgment under appeal is set aside; the case is remitted to the cantonal authority for reconsideration in accordance with the recitals.

Exhibit 18 Page 864